## Munson v. Sears et al.

1. CONSTRUCTION OF CONTRACT. In a contract for the sale of real estate the vendee agreed to pay the vendor for one undivided half of the amount paid for the property purchased, and for the improvements thereon, and for the improvements to be made thereon; and it was further mutually agreed that the title to a portion of said property should remain in the vendor, so long as the parties should so agree, that it should be sold for the benefit of both parties, and the profits divided; and that in case the parties should require a division of the lots, the vendor should make deeds conveying to each of the vendees his proportion of the property remaining unsold, the division to be made in an equitable manner, and as should then be agreed upon. It was held; that the contract contemplated a joint ownership of the property, and did not constitute the parties co-partners.

2. PLEADINGS: PARTNERSHIP. The sufficiency of allegations of copartnership in a pleading in chancery, considered and discussed.

*Appeal from Jackson District Court.*

MONDAY, APRIL 22.

ON the 13th day of November, 1857, the complainant, Samuel B. Munson, and one Harvey Munson, since deceased, entered into a written contract with the defendant, David Sears, of which the following is a copy:

"Articles of agreement made by and between David Sears of the first part and Harvey Munson and S. B. Munson of the second part, witnesseth: That the said David Sears hereby agrees and binds himself, his heirs and executors and administrators to make a good and sufficient warranty deed of one undivided half of the following described property, to the parties of the second part, as soon as payment shall have been made by them, as agreed on, or so soon thereafter as the parties of the second part may request the same to be done. The property is situated and described as follows, viz: Lots No. 4 and 5, and the W. fr. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 18, T. 84, R. 3 east, 151 50-100 acres: also all that portion of the S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 13, T. 84, R. 2 east, that lies east of the south fork of Maquoketa river, be it more or less; also the S. E. $\frac{1}{4}$ of section 12, T. 84, R. 2 east, 160 acres.

The parties of the second part hereby agree to pay the said David Sears for one undivided half of the amount paid for said property, and expended in making improvements thereon, and the improvements to be made. It is mutually agreed and understood, however, that the lots of the town plat of Lowell, included in the boundaries of the above described property, except the saw mill and lot, shall remain in the name of David Sears, so long as the parties may agree; and the lots shall be sold for the benefit of the parties hereto, the profits to be divided between them as follows, viz: David Sears is to receive one half and Harvey Munson and S. B. Munson, each one quarter of the profits arising from the sale of said lots. In case the parties shall require a division of the lots, then the said David Sears

agrees to make a deed to each party of his proportion of the lots remaining unsold, the division to be made in an equitable manner as may then be agreed on.

In witness whereof, &c.

(Signed,) DAVID SEARS,

HARVEY MUNSON,

SAM'L B. MUNSON,

" Received, Maquoketa, Nov. 13th 1857, eight hundred and forty dollars and fifty cents, at various times, to apply on this contract.                              DAVID SEARS."

David Sears was the owner in fee, and in possession of all the property described in said contract, at the time the same was executed, and remained in the exclusive possession thereof, and continued to improve the same by erecting a flouring mill, cooper shop, turning shop and several dwelling houses thereon, and fencing and improving said lands. Upon the 14th day of April, 1854, David Sears filed his petition in the District Court, claiming of the said Munsons the sum of $5,300 75-100 due him for one half the land and improvements, and praying for a judgment for that sum, and a lien on the land described in the agreement therefor.

S. B. Munson answered, admitting the contract, denying the alleged indebtedness, admitting a balance due Sears on the completion of the flouring mill in 1848, and claiming that the balance due for the land and improvements had been paid by the rents and profits of the land, and that there was a balance due him. The widow and heirs of Harvey Munson answer to the same effect.

Sears on the 7th of July, 1856, filed an amended bill, in which he alleged that 145 acres in section 25, was offered by S. B. Munson and accepted by D. Sears and Harvey Munson in part payment of their share of the cost of the land and improvements, and credited to him in his account of the cost of land and improvements at six hundred dollars ; that Sears and Harvey Munson entered into posses-

sion of the same, and that Sears has had continual possession thereof until the commencement of this suit, and made valuable improvements thereon.    Upon the 17th of July, 1857, S. B. Munson *et al.*, as the heirs of Harvey Munson, filed their cross bill, setting out the agreement as above; that prior to the date thereof Sears had erected on said property a saw mill at a cost of $600, and improved one hundred acres of said land, which constituted all the improvements at that date; that the flouring mill, turning shop, dwelling house and cooper shop, had been built, (which they allege cost about $8,500,) and were improvements on said land made without the consent of complainants, but that they were willing to allow a reasonable compensation therefor, to said Sears; that Harvey Munson, in his life time, and plaintiffs and said Sears deeming a copartnership formed by virtue of said article, complainants had paid, not only the $840 50-100 receipted on the agreement, but other sums, amounting in all to $5316.28, as set out in an account annexed to said bill, to said Sears, to be laid out and expended in the improvement of said property and for the joint and partnership profit; that the defendant, Sears, had been in possession of said premises since the date of said agreement, and had received the rents and profits of the same, amounting to $18,000; that complainants have been ready and willing to perform their part of the contract, and to accept a deed pursuant to the terms thereof.

The cross bill concludes with a prayer that an account of the costs and profits of said property, be taken, and that if the advances by complainants, and rents and profits have been sufficient to pay said Sears, that the said agreement may be specifically performed, and that David Sears be directed to execute a deed according to the terms of said agreement, and that the rights and interests of the respective parties be ascertained by an order an decree of the court.

To this cross bill, Sears answers in substance as set up in

his original and amended petition, denying any partnership; alleging that the saw mill and dam cost $2000; denying that plaintiffs have been ready and willing to perform their part of the contract; alleging that it was with the consent of complainants that he commenced to erect said planing mill and improvements, and that it was with the understanding that complainants would furnish their share of the money therefor, which they failed to do; denying that any money was laid out on any partnership interest, but that complainants paid it upon their contract; claiming that Munson has paid nothing since the spring of 1849, when the 145 acres were credited to him.

A replication and rejoinder were filed. The cause was submitted to a master upon the pleadings and evidence, who reported a certain amount due from defendant for rents and profits; that complainants had complied with their contract and were entitled to a deed. The decree and judgment of the court being in accordance with the finding of the master, defendant appeals.

*B. W. Poor* and *Wm. E. Leffingwell*, for the appellant.

*Booth & Grahame* for the appellees.

BALDWIN, J.—It was agreed between the parties, that either complainants or respondent had the right to except to the finding of the master, and appeal therefrom to the District Court. Sixteen exceptions were taken by the respondent to the report of the master, and each being overruled by the District Court, the defendant appeals.

Counsel, in their commendable zeal in behalf of their clients, have filed so many pleadings and arguments, which, with the evidence, present a record to this court of some seven or eight hundred pages, that while we regard it our duty to examine the same carefully and fully, we think it is not necessary that in our opinion we should discuss all of the points presented by counsel.

The first exception presented by the counsel, and the one to which the most importance as given by the argument, relates to the finding of the master upon the question of partnership.   The finding upon this subject is as follows:  "That in the purchase of the property, (named in the argeement,) in making the improvements and in carrying on the milling, manufacturing, farming and other business upon the same, David Sears, S. B. Munson and Harvey Munson were partners, and their partnership commenced on the 13th day of November, 1847."   The master thus bases his finding of a partnership upon the articles of agreement as above given, which was the commencement of the relation of the parties.

We are of the opinion that this finding is incorrect; *first*, for the reason that the agreement itself authorizes no such conclusion ; *second*, no such partnership is charged to have been in existence by any averments in the cross bill.   We are unable to ascertain the formation of a partnership by the agreement thus referred to.   If there is any portion of the agreement which contemplates a partnership, it is in that part which refers to the lots in Lowell, and we cannot conclude that even in this portion of the contract, a partnership was intended.   The whole of the matter now in controversy grows out of that portion of the contract which relates to the sale of the lands to the Munsons, and the improvements thereon, and the profits arising from the sale of the Lowell lots are not suggested as a matter of controversy. "A partnership agreement is, where two or more persons join together their money, goods, labor and skill, or either, or all of them, for the purpose of advancing a fair trade and of dividing the profits and losses arising proportionably or otherwise, between them." Bouv. Law Dic.  '· Partnership is a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profits, and

bear the losses in certain proportions." 3 Kent 24. To constitute a partnership in a particular purchase, or in a single transaction, there must be an agreement to share in the profit and loss. In this contract it was agreed to share ultimately any profit and loss. There was no investment of a partnership fund, no agreement that any business should be carried on in a firm name. The parties had no previous partnership or connection with each other in trade; and no intendment can be made in favor of a partnership so as to supply the absence of fact. *Post* v. *Kimbrey*, 9 John. 503. Whether the subsequent acts of the parties were, or were not sufficient to constitute a partnership, we think becomes immaterial at this time, as the complainants rely alone, in their pleadings, upon the original contract as the one from which all their equities flow, and it was upon the agreement that the master found that such partnership existed.

Again, we think the complainants have not averred in their cross bill that any partnership did exist, at least in such a manner as would require the respondent to answer thereto, or as would justify the master in finding that such partnership existed. In answer to the petition of Sears, the defendants do not allude to the existence of a partnership. Some two or three years after, in their cross bill, in which they seek a specific performance of the contract and pray for a settlement of accounts, in referring to the contract, the complainants say : "And your orators further show unto this court, that the said Harvey Munson in his life time, and your orator, the said Sam'l B. Munson, as also the said David Sears, mutually deeming and considering that a copartnership had, by virtue of said article, been entered into, not only with reference to the purchasing of said described land, but also as to the improvements then made, and thereafter to be made thereon, and the sale of the lots, and division of the profits between them, the said Harvey, David and Samuel ; They the said Harvey Munson (in his life time,) and your

orator, Samuel B. Munson, in good faith, during the life time of said Harvey, advanced and paid out toward, and on account of said property, by reason of said contract, not only the said sum of $840.50, but also sundry other sums of money, during the life time of said Harvey, and by your orator, were paid to said Sears; and paid and laid out at his request, and for the improvement of said property, and for their joint and partnership interest in said property, and for their mutual profit, in all, amounting to $2316.28."

This is the only averment in the bill on the subject. We think that a partnership is not so distinctly and pointedly charged as to establish the existence thereof if not replied to. What does this averment amount to? Simply this: that complainants and defendant supposing that a partnership existed by virtue of the article of agreement, they paid up the cost of the land and improvements as they had agreed to. They do not charge that it existed, and that by such existence certain equities flowed to them therefrom; they merely assert that the parties understood a partnership to exist by virtue of the agreement.

The next exception that we will consider relates to the finding of the master as to the right of the parties on what is termed the Munson land. It appears that the title to one hundred and forty-five acres of land, near or adjoining the land specified in the agreement, was in S. B. Munson; that about forty-five days after the agreement was made, S. B. Munson proposed, in a letter written to David Sears, to put in his farm, upon which there were some improvements, and connect it with the mill property, at a fair price; that Harvey Munson was then at work for David Sears, and, in the same letter in which this proposal was made, S. B. Munson requested Mr. Sears to consult Harvey upon the proposition. It is claimed by Sears, in his amended petition, that he accepted said proposition; that he gave to said S. B. Munson credit in the sum of six hundred dollars, which he

claims was a fair and reasonable consideration therefor; that he immediately took possession thereof and so advised said S. B. Munson; that he made valuable improvements on said land, continued in the possession thereof from the spring of 1848, until the sppring of 1857, and paid the taxes thereon, which possession and improvements and acts of ownership were known to, and acquiesced in, by the said Munson. This amended petition is not replied to, nor do the complainants refer to it in their cross bill.

The master finds, that the said Munson is the owner of said property, and charges Sears with the sum of $400 for the use thereof; whether as agent, tenant or trespasser, it does not appear; nor does it appear that any allowance was made for improvements. Without undertaking to determine the question of title or ownership in this land, especially so far as it may affect third parties, we do think that the defendant Sears was, from the acts of Munson, justified in passing to his credit the $600 in part payment of the land specified in the agreement. We think that there is sufficient evidence, taken in connection with the admissions in the pleadings on the part of S. B. Munson, to have justified the court in finding that the Munson farm was applied in part payment of the amount due on the contract, by the assent of all the parties interested. The evidence arises from the presumptions which flow from the continued possession of defendant, the improvements and payment of taxes by Sears, and the neglect of Munson to look after or object to such possession, or to call Sears to an account for rents or profits arising therefrom, taken in connection with the proposition made.

The account existing between the parties, as found by the master, appears to have been based upon the supposition that the parties were partners, and that Sears had been in possession, had received all the rents and profits, and was fraudulently refusing to account therefor. He is therefore charged as a partner, who, in fraud, refuses to account, or

discover the actual amount of such rents and profits, with average annual rent of all the property of the parties thus under his control.

We can not conclude from the pleadings or the evidence, that the respondent, Sears, refused or failed to set forth the actual condition of his account with any such a design. From the peculiar character of the contract, from the relation and actions of the parties after the same was executed, from the failure of the enterprise, which appears, by the agreement, was one of the objects therefor, the sale of the Lowell lots, it is hard for courts, as well as for the parties, to understand the actual legal relation they stand in, toward each other—whether, that of partners, joint owners or vendor and vendee. Holding, however, that a partnership was not intended by the original contract, and none being charged as formed subsequently thereto, by the cross bill, it becomes important to determine the relation that does exist between the parties by virtue of said contract and their subsequent acts in relation thereto.

We think that a joint ownership was contemplated by the contract, that all that was necessary to place the parties in this position was the payment in full, of the purchase money and the value of the improvements as specified therein. Giving to the Munsons credit for $600, the price of the Munson farm, within forty-five days after the contract was made, and with other amounts paid prior to the commencement of the improvement of a flouring mill, there had been a sufficient amount paid to have complied with the terms of the agreement, and entitled the Munsons to a deed had they demanded the same. The Munsons were the equitable owners of one half of the property, and were liable for one half of the costs of the improvements made with their assent, and entitled to one half of the rents and profits, and Sears to the other half. The Munsons permitted Sears, who was entitled to the possession of the undivided half, to remain in

the possession of the whole. The premises were not leased to·him, so that he would be responsible for an annual rent, but he occupied the premises by the right he had to the undivided half of the same, and by the acts and permission of the other owners. Being thus in possession, we think that Sears, would be liable for the undivided one half of the nett annual proceeds of the farm and mill, and other property; that the Munsons were liable to him for the cost of the improvements made thereon.

Being unable, from the report of the master, to determine this amount, the cause will be remanded.

Reversed.

(1.) A petition for a rehearing was filed by *Booth, & Graham* for the appellees, in which the questions of law and fact involved in the case were elaborately argued. The grounds upon which a re-examination of the case was asked are stated as follows in the petition : —

"Believing as we do, that the court have been mislead in some respects by errors of print, and in others by regarding the parties from a wrong point of view, we most respectfully ask an examination of this case.

We conclude with the following propositions : 1st, If these parties are not to be regarded and treated, in equity, as partners in no sense of the word, then most clearly, by all the authorities, the conclusion of the court, that Sears must account for the net profits (be it said, with all due defernce,) must be a solecism, as the conclusion does not in equity agree with, or flow from the premises; for if not partners, then they have no right to talk of nett profits, which clearly involves the question of profit and loss; and if the parties have no right to dispose of this case upon that basis, then surely a large amount of Sears's claims, being for losses and for services, must fall to the ground; and so long as the Munsons have not complained of that basis, surely Sears has no ground in equity and good conscience to complain of the Master, who in his report has placed the whole accounting by Sears, on th o most favorable position possible for him, as the Master credits, him with his account for losses, and also some $2,600.00, for his services, all of which must be rejected upon any basis other than of partnership. In other words, it can not with propriety, be said, that they were not partners, and yet conclude and order, that Sears do account the same as though they were partners. · 2d. If the present decision of the court is to stand with reference to the "Munson Farm," then it seems to us, that we virtually have a Court of Equity decreeing a specific performance of a contrrct not prayed for nor claimed by Sears; and yet left as an open question for future controversy, whether the court intended to give the entire "Munson Farm" to Sears alone, or intended it to be "*put into common stock and connected with the mill property*," as alleged by Sears in his answer to the cross bill, we are at a loss to discover. And as to this "Munson Farm," we have no doubt, that the court upon a fuller examination of the facts and pleadings, concur in opinion with, and confirm and sustain the decision both of the first referees, as also of the Master.

Which petition, upon due consideration, was overruled.