SEARS v. MUNSON *et al.*

1. **Case approved.** The decision of the court in the case of *Munson* v. *Sears*, 12 Iowa, 172 upon the question of partnership between the parties, adhered to and held conclusive herein.

2. **Tenants in common:** INTEREST ON ADVANCES. Where one of joint owners of real estate, makes improvements thereon, with the under-

standing that the other joint owners are to furnish their share of the cost thereof, he is entitled to interest on money furnished or advances made by him therefor beyond his proportion.

3. —— COMPENSATION FOR SERVICES: FOR IMPROVEMENTS MADE AFTER DEATH OF CO-TENANT. Under the peculiar circumstances of the case, such joint owner was allowed a compensation for his services in superintending the property, and in the erection and management of improvements thereon, and also for expenditures made by him after the death of one of the joint owners, but commenced before, under a pre-existing contract.

4. Notice: ARISING FROM POSSESSION. A purchaser of real estate is deemed charged with constructive notice of the equities of one who is in actual possession of the premises at the time of the purchase.

### Appeal from Jackson District Court.

### THURSDAY, DECEMBER 12.

IN EQUITY. — This cause, on a former appeal, was before this court, and its decision reported in 12 Iowa, 172. For the general nature of the controversy, reference is made to the statement and opinion there given.

The date of the contract between the parties is misprinted. It should be November 13, 1847, instead of November, 13, 1857.

In setting out a copy of the contract the words " by their (Munsons') consent," are omitted, as they occur in connection with the clause in reference to improvements to be made.

The original contract reads thus :

" The parties of the second part hereby agree to pay to the said David Sears, for one undivided half of the above described property, an equal half of the amount paid for said property and expended in making improvements thereon, and the improvements to be made by their consent."

On the former appeal the cause was remanded as stated in 12 Iowa, 182. When the cause again reached the

District Court, the parties differed as to the effect of the decision of the Supreme Court.

Munson contended that the decree was reversed, and the cause remanded generally, without any directions to the court below. Sears contended that the rights of the parties were settled by the decision, and that the cause was remanded for the purpose of ascertaining profits and income received, and stating an account on the basis settled by the opinion in 12 Iowa. The referee and District Court, on this point, held with Munson so far as to allow parties to amend their pleadings, which both parties accordingly did.

Sears by amendment, added new claims against Samuel B. Munson. He also filed a supplemental petition against Munson and one Sellew (his grantee), praying that they be decreed to convey to him an undivided half of the "Munson farm" (see 12 Iowa, 179, 180), viz.: the 145 acres of land in section 25. Munson answered, putting in issue all of Sears' material allegations in this respect. Sears moved to strike this answer from the files, because the point was *res judicata* by the decision of the Supreme Court, but the motion was denied. Sears excepted.

The cause was referred to the Hon. A. R. Cotton, as referee to take testimony therein, and to try the same, and report to the court.

A large amount of additional testimony was taken, and, as a result of a hearing, continued through five days, the referee made the following report, which is set out herein, because it gives in as succinct and perspicuous a manner as possible the facts in controversy, and his findings and conclusions thereon:

1. That the parties, David Sears, Samuel B. Munson and the heirs of Harvey Munson, own the land in Jackson county, State of Iowa, below described, with the appurtenances, to wit: All that portion of the south-east ¼ of the north-east ¼ of section 13, in township 84, north

of range 2 east of the 5th P. M., that lies east of the south fork of the Maquoketa river, quantity unknown. Also, the south-east quarter of said section 13, said to contain 160 acres. Also, the east ½ of the south-west ¼ of section 18, in township 84, north of range 3, east of the 5th P. M., said to contain 80 acres. Also, lots No. 4 and 5, and the west fractional half of the south-west ¼ of said section 18, said to contain 150 50-100 acres, except two acres conveyed by said Sears to Jonas Clark, bounded as follows : Commencing on the south line of said section 18, four rods east of the south-west corner of said section 18, and running thence east along said line 24 rods; thence north 13¼ rods; thence west 24 rods ; thence south 13⅛ rods to the place of beginning. The legal title to all of said land stands in the name of said Sears — said Sears owns an undivided one-half of said land. Said Samuel B. Munson owns an undivided one-fourth of said land, and the heirs of Harvey Munson own an undivided one-fourth of said land, but the interests of said Samuel B. and of the said heirs in said land, are subject to the lien of said Sears for the money hereinafter stated to be due said Sears, on account of said land and improvements made thereon.

2. That said Samuel B. Munson proposed to said Sears and Harvey Munson, that he (Samuel B.) would put the land below described, in " common stock," with the lands above described, which proposition was accepted by said Sears and Harvey Munson in the year 1848, and, in pursuance of such proposition and acceptance, said Sears and Harvey entered into possession of the said land below described, and said Sears made valuable improvements thereon under said proposition and acceptance, and said Sears continued in the actual possession of said land until after the time said Samuel B. Munson and wife executed to Wm. Sellew the deed of conveyance mentioned in the pleadings in these cases. The price at which said land was so put in was $600. In addition to the testimony of Sears, that the price was fixed at $600, this seems, from the evidence, to have been about its fair value.

Said land is situated in Jackson county, in the State of Iowa, and described as follows : The west ½, of the south-east ¼, and the north 65 acres of the east ½, of the south-west ¼, of section 25, in township 84, north range 2, east of the 5 P. M., said to contain 145 acres. Said Sears has paid said Samuel B. Munson for the interest of said Sears in said land, being one individual half thereof, by giving said Munson credit on account, which was done prior to the conveyance to said Sellew.

3. Said Sellew having taken the said conveyance of said land in section twenty-five, while said Sears was in the actual possession of said land, is affected with notice of the said interest of Sears' therein, and said Sears can require said Sellew to convey to said Sears the

undivided one-half of said land, in said section twenty-five, in pursuance of the agreement made by Samuel B. Munson.

4. Said Sears was requested by Samuel B. Munson and Harvey Munson to take charge of the said real property which they owned in common, and of the improvements thereon made, and Sears is entitled to reasonable compensation for his services in superintending said property, and the making of improvements, renting the same and paying taxes, and that for services so rendered he is entitled to be allowed the sums which are credited him for his services in the account hereinafter contained.

5. That, in consequence of Sears having been thus employed, and claiming compensation for his services, he is legally liable to account to said Samuel B. Munson and the heirs of Harvey Munson for their share (according to their said interest in said real property), not only of the net income of said property received by said Sears, while rented by him, but also of the net profits made by said Sears from said property while used and operated by himself, and I find said net income and profits to have been as stated in the account hereinafter given.

6. That said Sears is entitled to be allowed in his account with Samuel B. Munson and the heirs of Harvey Munson, with the cost of improvements made by Sears on said property, and I find the cost of such improvements to have been as shown in said account.

7. I find the state of the account between David Sears on the one hand, and Samuel B. Munson and the heirs of Harvey Munson on the other, to be as follows:

[Referee then proceeds to give a lengthy and detailed account of the cost of the mill property, and the amounts expended by Sears, and the amount received by him from 1847 to May 16, 1865, the date of the commencement of the trial of these causes before him. The result is, that the Munsons owe Sears the sum of $2,335.79.]

8. I therefore find that at the time this trial commenced before the referee, May 16, 1865, there was due the plaintiff, David Sears, the sum of two thousand three hundred and thirty-five dollars and seventy-nine cents on account of the mill property, so called (that is, all the real estate in sections thirteen and eighteen, above described), and improvements thereon, and that he is entitled to a lien for that money with the interest to accrue, on the undivided half interest of said Samuel B. Munson and the heirs of said Harvey Munson in said real estate.

Sears v. Munson.

In the above account, I have not charged Sears for the use of the dwelling occupied by him, but in fixing his compensation, have taken into consideration the fact, that for most of the time he was furnished with a residence on the common property.

From the time the mill property was rented, Aug. 7, 1853, I consider $50 per year, in addition to the use of the dwelling, adequate compensation for work done by him personally on the Slough dam, while he was allowed an annual compensation of $300 and $400 and use of dwelling. I have considered that he was paid by that compensation for such work, and have deducted the amount of such work from his charges on the Slough dam. I consider that Sears is paid for the services of his family in connection with making the improvements, boarding hands, and for provisions consumed, and teams and wagons used in making the improvements, in being paid the full cost of the improvements, and therefore all such charges are rejected. For the cutting box and the fanning mill, I allowed $40, conceded by defendants.

The large items of account at the store, presented by Sears, as evidence of cost of improvements, have not appeared to be satisfactory evidence in that respect, especially as he was making payments through the same store for other business at the same time, and in his own testimony is not positive as to these items. He says: "Those amounts, as near as I can make out, are made up of cash and goods paid to me, or to my order, to pay for work and materials in building the house, barn and mill, and were all expended in the mill property."

I have not included in the above accounts, improvements made on the land in section 25, after the same was conveyed by Munson to Sellew; nor taxes paid thereon, nor income received therefrom after that time.

9. I find the private account between said Sears and Samuel B. Munson as follows:

[Referee here gives the items of debt and credit, showing to be due Munson from Sears, $32.43.]

This is carried to credit of Samuel B. and Harvey Munson in this account above, with Sears, in the year 1848. I have not allowed Sears all his charges for personal services, as Samuel B. Munson rendered him some services in return.

10. I find that the account between Samuel B. Munson and the heirs of Harvey Munson, as to payments made by Samuel B. and Harvey and Sears, to stand as follows:

Sears v. Munson.

Amount paid to Sears up to November 13, 1847, by both, as shown
  in statement of account above, between them and Sears,.. $1,186 75
One-half of which is, .................................... 593 37
Paid by Harvey, as shown by receipts filed in this cause by
  David Sears,......................................... 660 20

Harvey paid over his half,............................... $66 83
Interest to November 13, 1848,........................... 4 00
                                                            $70 83

November 13, 1848.

Paid to Sears by both, since November 13, 1847, as shown in
  statement of account between them,.................... $1,314 39
  and Sears, one-half of which is,...................... 657 19
Harvey paid by work,.................................... 138 92

Excess of payment by Samuel B., November 13, 1848,...... $518 27
Deduct the .......................................... 70 83

Balance of excess of payment by Samuel B., November 13,
  1848, .............................................. $447 44
Add interest to time of trial, May 16, 1865,............. 443 18

Making excess of payment by Samuel B., over payment
  by Harvey, with interest to May 16, 1865,............ $890 62

In the above statement, Harvey is charged with an undivided fourth
interest in the land in section 25, to which he, or his heirs, would be
entitled, as against Samuel B., on paying for the same under the
arrangement by Samuel B., with Sears and Harvey, to put it in com-
mon stock. Neither have I made any report as to the rights of the
heirs of Harvey Munson in said land as against Sellew, for the reason
the heirs deny that they have any interest in the same, and do not ask
any relief in that respect.

11. As the result of the above finding, I report, that the plaintiff,
Sears, is entitled to a decree against the defendant, Samuel B. Munson,
and William Sellew, for the specific performance of the agreement
made by said Munson with Sears, for the sale to Sears of the undivided
half of the land above described, situated in said section 25, and com-
pelling said Sellew to convey to said Sears in fee the undivided half of
said land. And that said Sears is entitled to a decree against Samuel B.
Munson and the heirs and widow of Harvey Munson for the foreclosure
and sale of their undivided half interest in all the land above described,
situated in sections 13 and 18, or sufficient thereof for the purpose of
making the said sum of $2,335.70 found due Sears, with interest and
such costs as the court may tax in favor of Sears; and should the same

be paid before sale, that then said Samuel B. Munson will be entitled to a conveyance from said Sears in fee of an undivided one-fourth of said land, in sections 13 and 18, and the heirs of Harvey Munson to a conveyance from said Sears in fee of an undivided one-fourth of the same land.

Much of the costs of this controversy might have been saved, had Sears kept and rendered an account of the business under his charge, and I therefore recommend a division of the District Court costs.

A. R. COTTON, *Referee.*

A decree was entered in accordance with the report of the referee. All parties, including Sears, Munson and Sellew, appeal.

*B. W. Poor* and *C. M. Dunbar* for Sears.

*Booth & Graham* for Munson and Sellew.

DILLON, J. — A majority of the court is of the opinion, that the former decision in this case (reported in 12 Iowa, 172) concludes the parties on the question of partnership and as to the rights of the parties, so far as then before the court, respecting the Munson farm. Concerning the question of partnership, we do not see how its determination, one way or the other, would effect any material change in the result. It is more speculative than practical, and no injustice is done to the parties, or any of them, by the former opinion. Concerning the question as respects the Munson farm, the referee heard the parties anew upon the merits, and arrived at the same result as that expressed by this court, in its opinion (12 Iowa, 179, 180). Upon an examination of the evidence, we would still be satisfied with this conclusion, if this question were not foreclosed by the previous decision of this court.

So that practically, the material questions remaining, relate to the state of the accounts between the parties.

1. CASE
APPROVED.

It is not proposed, nor indeed is it practicable within any reasonable limits to enter upon a minute and detailed examination of the lengthy accounts between the parties, extending through the long period embraced between A. D. 1847 and 1865. We limit ourselves to a notice of the objections taken by the parties to the principles adopted by the referee in stating the account.

And *first* we notice the errors insisted upon by the counsel for the Munsons and Sellew. The first two points in their printed argument relate to the alleged partnership. This question is disposed of by what is above said on that subject.

It is next objected that all allowances to Sears, for interest, are erroneous. We think the allowance, under the circumstances of the case, to be correct, so far as Sears made advances over and above his proportion. The improvements were undertaken by Sears, at the request of Munson, and upon the express understanding that the Munsons should furnish their share of the cost of the same. Munson failed to do so. This is substantially admitted in his letter to Sears, of August 12, 1848. He deplores his own want of means, urges the early completion of the mill, and says to Sears, " if you (Sears), out of your greater means can push the matter through, 1 will see that you lose nothing for advancing any thing on my account."

2. TENANTS IN COMMON: interest on advances.

This would justify an allowance of interest on money furnished or advanced by Sears, made beyond his proportion.

The referee did not compound interest; but pursued the course which, assuming interest to be chargeable, was the proper one. Where the rents and profits received by Sears were sufficient to pay the interest on his advances, they were first applied to extinguish the interest; when not sufficient for this purpose, the balance of interest

over the amount received was reserved, to be added to the final balance.

It is urged that Sears, whether to be regarded as a partner, a tenant in common, or a vendor, is not entitled to compensation for his services. As such merely, he might not, as a matter of law be entitled to pay. *Levi* v. *Karrick*, 13 Iowa, 344.

3. —— compensation for services: after death of co-tenant.

But here the circumstances are peculiar. Sears came to Iowa, especially at the request of Munson, to superintend the building and management of the mill. S. B. Munson remained behind devoting his time to his own business. Harvey came, and died soon after. S. B. Munson says he thought Harvey's services would set off Sears', and that he would arrange with Harvey for his (S. B.'s) share. But Harvey died, and Sears still continued his services, and we find in the evidence sufficient to satisfy us that there was a *definite understanding* or agreement that Sears should be paid.

The law would fix the amount at what is reasonable. In considering all the circumstances of this case we think the amount allowed Sears by the referee is too large by the sum of $561.93. The point made, that after the death of Harvey, Sears could not go on and complete the improvements commenced under the contract of November 13, 1847, seems to have been ruled against the defendants on the former appeal. At all events the heirs of Harvey take under that contract just as it reads. The improvements were commenced when Harvey was alive, and completed after his death, but in pursuance of the contract and plan. Under the circumstances of this case, which we need not stop to detail more at length, it would be inequitable to disallow Sears for advances made to complete the mill, and to carry out the contract and execute the intention of the parties.

The former opinion settles the question as to the

"Munson farm," so termed, between Sears and the Mun-

**4. NOTICE: arising from possession.** sons. Sellew purchased when Sears was in actual possession and had constructive, if not actual, notice of his rights.

*As to Sears' appeal.* We are satisfied with the estimate of the referee as to the cost of the mill property and with his action in disallowing the $462.15, of which complaint is made.

Sears, claiming compensation for his services, and being allowed therefor, is, in our opinion, justly charged by the referee with the income and profits of the property, both when he used and operated the mill and property himself, and when he rented it to others. In disposing of the numerous questions in this cause, as it might seem, somewhat briefly, we wish to observe that an attentive examination of the record has abundantly satisfied us of the minute, patient and conscientious care and ability with which the cause was investigated by the referee, and of the general equity, fairness and good judgment which characterize his findings. It is useless, therefore, to dwell more at length than we have done, upon the items of the accounts of the respective parties.

With the deduction of $561.93, before alluded to, from the sum found by the referee, $2,335.70, there is due Sears, the sum of $1,773.77. With this modification the decree below is affirmed. Costs of appeal, including allowance to a referee appointed by this court, will be paid by Sears.

                                   Modified and affirmed.