The opinion of the court was delivered by
Duncan, J.
The jury beiqg returned by the brother of the defendant, in error, plaintiff below,- a challenge was made to the array, and overruled and exception taken.
At the common law, this was good cause of challenge. The wisdom of our ancestors guarded the purity of the administration of justice from even the suspicion of partiality. The jurors returned, as well as. the officers who returned them, were, as far as human precaution could provide, to stand unprejudiced. Our own legislature intended to add further security, by the several laws directing the mode of selecting and returning jurors. The balloting for the jurors to be returned, as well as making out the list from which they are to be drawn, is to be conducted by the sheriff and commissioners of the county. It, therefore, would be no- cause of challenge that the sheriff Was related to one of the parties, so far as respected his uniting with the commissioners in making out the list, and the other measures preparatory to their summons. But there remains a very important duty to be performed by the sheriff alone, in which he has it in his power to exercise some partiality. He *337 may summon those of the jury whom he might think most favourable to his relation, and omit summoning the rest, and thus to a certain extent pack a jury as much as if he had the sole power of selecting the panel; for he may select and return whom he pleases of the general panel. If the sheriff could execute the venire process, he might hold a view. It is not what the sheriff has done in the particular case, but what he has the power to do. It is because of his power to execute itpartially, that he is disqualified from executing it at all. The next desideratum to the pure administration of justice is, the giving satisfaction to the suitors, that their causes have been fairly and impartially decided. Now no man would be satisfied if the brother of his adversary had power to make any choice who should try his cause. In the Supreme Court of New York, Woods v. Rowan and Coon, 5 Johns. 133, the principle is decided. There, to be sure, the sheriff was the party, but had no concern in balloting for the jury: yet by his power of selecting triers of the cause, he had an advantage which the other party had not, and however remote or unimportant that advantage might be, if it existed at all, the law would not allow him the opportunity of availing himself of it. The case of tales men is provided for by the act. There if the sheriff is liable to legal exception the coroner is to return them, and if he is liable, the elisors to be appointed by the court: the legislature thus declaring the returning officer liable to all the legal exceptions of the common law, even in the case of a special jury, with the nomination of which he has no concern. If liable to legal exception, that is if a party or related to a party, he cannot make the return. I see no occasion to depart from this settled rule, wisely introduced for the purpose' of guarding against corruption and partiality in trials by jury, the great, security of property and of life itself. There is a distinction between the returning of the jury by the sheriff, which is his sole act, and the making out the list and balloting. The list is to be made out jointly by the sheriff and commissioners. It is to contain the whole necessary number for one year, and from the whole number put into one wheel, the particular panel for each term is to be drawn. The act makes no provision but for an annual list, which is to be made out by the sheriff and commissioners, and therefore of necessity the sheriff must attend to the duty with the commissioners. But there is no necessity, where he is liable to the common law exception of partiality, that the venire should be directed to him. The venire may be directed to the coroner or to elisors, and the return made as the act directs as to tales men.
There are several exceptions to the opinion of the court, which as the cause is to be sent back for trial, renders it proper for the court to consider the exceptiohs, and points made in the Common Pleas. The charge of the court is not altogether free from obscurity. Different interpretations have been put on it by the counsel, *338 On a fair view of its whole structure, I think the plaintiffs in error have failed in substantiating the first error assigned. I do not understand the court to say, “that, where two persons live, on adjoining tracts, claiming adversely;, and the line not distinctly ascertained, 21 years actual possession would not bar the plaintiff *s recovery.”- Did I so understand the charge, it would appear to one to be erroneous, when the actual possession was by inclosure, however correct it might be, where there was a scambling possession, or a mere constructive one, and not an exclusive occupation.
The 2d and 3d specifications are the same, and if the court had instructed the jury, that where a man cleared over his patented or surveyed lands, and occupied a space by actual inclosure, comprehended within the settlement right of another, or the claim of ano? ther founded on settlement right, and continued in such possession for 21 years after such inceptive title, by entry on vacant unappropriated lands, and that such settler afterwards obtained a warrant calling for his improvement, that the act of limitations will only begin to run from the date of the warrant or time of improvement stated in the warrant, this would be error. For as I have said in sJohnson v. Irvine, I cannot see any case where limitation would be a bar, if not in this case. The actual occupation, however ■torrtious it might be, however destitute of the colour of title either in law or equity, gives a right to the extent of inclosure against all the world, but the state. If then a settler whose inceptive right to vacant lands commences with the origin of his settlement, suffers another to continue his occupation for 21 years, of lands which his inceptive right would reasonably include, he cannot shelter himself from the operation of the act. Where he takes out his warrant within 21 years, if he dates back his warrant to the time of his settlement, the limitation commences from that time. If he dates it as of a time posterior, or does not pay any interest on his warrant, this fraud on the state will not put him in a better state than if he acted honestly. It is clear to me, that the limitation against a settler runs from the inception of his settlement whatever may be the date of his warrant. This construction while it secures to the state her purchase money, gives to the possessor the benefit of his long continued and uninterrupted possession. To construe it otherwise, would give to a settlement right to vacant unappropriated lands, with undefined boundaries, a protection' beyond a patent whose boundaries are ascertained. I observe, the court in their charge throughout, say, that the time only runs from the date of the grant of the commonwealth, and explain their meaning of grant $, by grants they say, they mean all paper titles of every species, If it was the intention of the court to lay down the law to the jury, that the limitation commenced only from the paper inception of title under the state,' this would be error: *339 for this court state distinctly, that whatever may be the origin of title, whether it commences by settlement, application, or warrant, the limitation begins to run in favour of the possessor, against such settler, applicant or warrantee from the day his equitable right by settlement first commenced, whatever may be the date of his paper title. The court think there is some obscurity in the charge in this respect, but as there is error in overruling the challenge to the array, (with these observations on the effect of limitation oh the rights of the parties,) the judgment is reversed on this ground.
Judgment reversed, and a venire facias de novo awarded.