PATRICK FLAHERTY

*v.*

LEANDER J. McCORMICK *et al.*

*Filed at Ottawa March 27, 1885.*

1. TRIAL BY JURY—*constitutional right—as to cases in chancery—in partition.* The provision in the constitution preserving the right to trial by jury, has no reference to cases in which courts of equity have jurisdiction. The right to such trial is confined to cases at law.

2. A court of equity having jurisdiction, both at the common law and by statute, of suits for the partition of land, a defendant in such a suit is not entitled, as a matter of right, to demand a trial of the issues by a jury, even if there is a dispute as to the title.

3. LIMITATION—*twenty years' possession of land.* The actual and open occupancy of a tract of land for a period of twenty years, under a claim of ownership, whether under a paper title or not, is in this State sufficient to bar an action brought by the party holding the true title, when he is under no disability.

4. But an adverse possession of land for twenty years, in order to defeat an action by the true owner of land, must have been hostile in its inception, and so continued without interruption for the full period of twenty years; and the possession must have been actual, visible and exclusive, and acquired and retained under claim of title inconsistent with that of the true owner. The title, however, need not be a rightful claim, nor the possession taken and continued under color of title.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Messrs. WALLACE, MASON & MEDBURY, and Messrs. COLLINS & ADAIR, for the appellant.

Mr. JOHN N. JEWETT, and Mr. W. T. BURGESS, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Leander J. McCormick, in the Superior Court of Cook county, against Cyrus H. McCormick and Patrick Flaherty, for the purpose of dividing a certain tract of land lying in Cook county, south of the west branch of the south branch of the Chicago river, in the west half of the west half of the south-west quarter of section 30, township 39, north, range 14, east of the third principal meridian, except the south one hundred feet of the tract, containing about twenty-nine acres.

It is alleged in the bill that on the 2d day of April, 1872, Samuel J. Walker, being seized in fee of the land by deed of that date, conveyed the land to Cyrus H. McCormick and complainant, who now own the land as tenants in common,— Cyrus H. McCormick being entitled to an undivided three-fourths, and the complainant one-fourth. The bill prays for a partition of the land. It is also alleged in the bill that at the time of the conveyance Patrick Flaherty, the defendant, was in possession, as tenant at will of and under Samuel J. Walker, of a portion of the lands, being a small tract of about one acre, south of the "old Blue Island road," so-called, and of another tract of about twelve acres, north of said road; that said tenancy has been determined, and Cyrus H. and Leander J. McCormick are entitled to the possession thereof; that Flaherty has no longer any estate or interest in said lands, and is holding over without right. It is also alleged that Flaherty entered into the possession without title, as a mere squatter; that before the conveyance from Walker, Flaherty had frequently recognized Samuel J. Walker to be

the owner, and agreed to hold the possession for and under him, and surrender the land to him when requested. It is also alleged that shortly after the conveyance was made, Flaherty was requested to move off said premises, and surrender the possession to the McCormicks, which he refused to do, alleging as an excuse that he had been in possession claiming title for twenty years; that thereupon complainant and Cyrus H. McCormick commenced an action of ejectment against Flaherty, on the 19th day of March, 1877, to recover the possession of the premises; that Flaherty appeared and pleaded to the action, and the cause remained pending until October 19, 1882, when, without a trial, the cause was dismissed.

The answer of Patrick Flaherty denies that on April 2, 1872, or at any time, S. J. Walker was seized or possessed, in his own right, of the lands described in the bill; denies that Walker, on April 2, 1872, conveyed the premises to the McCormicks in the manner and for the consideration set forth in the bill; admits that he was in possession of a portion of the lands described, at the time of said alleged conveyance, but denies that he was a tenant at will. of or under said Samuel J. Walker, and denies a tenancy of any kind between Walker and himself; denies that Cyrus H. McCormick or Leander J. McCormick is entitled to the possession of the premises, as alleged, and denies that he has no interest or estate in said lands, and is holding over without right; denies that he entered into possession without right or title, or claim or color of such, or as a mere squatter, as alleged; denies that frequently, before said conveyance, he had, or at any time, acknowledged Walker to be the owner of said land, and agreed to and with him to hold the same under and for him, and to quit and surrender the same to him when requested by Walker, or that he was so holding the same, and otherwise had no right or title to said land when said alleged conveyance was made; denies that he was, shortly after said

conveyance was made, requested to move off said premises occupied by him, and to surrender the possession thereof to the complainant and Cyrus H.. McCormick, or that he refused to do so, alleging as an excuse false and fraudulent pretences; charges that he has been in the peaceable, adverse and continuous possession of said premises, with claim of title, for more than twenty years before the commencement of this suit, and insists upon the Statute of Limitations as a bar to the action.

Cyrus H. McCormick put in an answer to the bill, admitting all its allegations. He also filed a cross-bill containing the same allegations, in substance, of the original bill, and claimed the same relief against Flaherty. To the cross-bill Flaherty filed an answer similar to the one put in to the original bill. The cause came to a hearing on the bill, cross-bill, answers and replications, and the court found the issues for the complainant, and decreed that Flaherty surrender the possession of the property to the McCormicks. From this decree Flaherty appealed.

It appears from the record that on the 10th day of July, 1883, (one of the days of the July term of court,) the defendant, Flaherty, entered a motion that the cause be tried by a jury, which motion was denied, and, by agreement, the cause was continued. Afterwards, and on the 11th day of December, 1883, during the December term of court, the defendant, Flaherty, entered a motion in the cause that the issue be tried by a jury, and in support of the motion filed a demand, in writing, as follows:

"And now comes the said Patrick Flaherty and demands a trial by jury of the issues made by the pleadings in the above entitled cause, between him and the said complainants in the original and cross-bills, and for cause states that said pleadings, and the issues formed thereby, show that the only question to be tried, as between this defendant and the said

complainants, is, do the said complainants own the premises occupied by this defendant, in fee, or does this defendant own said premises in fee,—which question is purely a legal one, and has heretofore and should be now tried according to the rules of the common law in actions at law, and is not an equitable one, to be tried according to the practice in chancery cases.      Signed:      PATRICK FLAHERTY,

By counsel."

This application was also denied, and the defendant excepted.

It is contended that while this action is, in form, a bill in equity for partition, it is simply an action of ejectment, wherein the McCormicks are plaintiffs, and Flaherty defendant; that defendant had a constitutional right to trial by jury, and the denial of that right was erroneous. What may have been the secret motive of the complainant in bringing a bill in equity for partition, we have no means of knowing, nor is that fact at all material. The facts alleged in the bill are sufficient to give the court jurisdiction of the subject matter, and that is all that can be required. Originally, courts of common law had jurisdiction over the subject of partition, but whether that jurisdiction was exclusive is a question upon which the authorities do not agree. But however that may be, long before this State had an existence as a State, courts of equity had jurisdiction in cases of partition. The exercise of the jurisdiction became a necessity, for the reason that in many cases the remedy at law was found to be inadequate. In 1 Story's Equity Jurisprudence, sec. 651, the author says: "The true expression of the doctrine should have been, that courts of equity interfere in cases of such a complication of titles because the remedy at law is inadequate and imperfect, without the aid of a court of equity, to promote a discovery, or to remove obstructions to the right, or to grant some other equitable redress." Lord ELDON, in *Ayer* v. *Fairfax*, 17 Ves.

551, said: "This court issues the commission, not under the authority of any act of parliament, but on account of the extreme difficulty attending the process of partition at law, where the plaintiff must prove his title as he declares, and also the titles of the defendants, and judgment is given for partition according to the respective titles so proved. That is attended with so much difficulty, that, by analogy to the jurisdiction of a court of equity in the case of dower, a partition may be obtained by bill. The plaintiff must, however, state, upon the record, his own title and the titles of the defendants; and, with a view to enable the plaintiff to obtain a judgment for partition, the court will direct inquiries, to ascertain who are, with him, entitled to the whole subject." These authorities indicate the ground upon which courts of equity become invested with jurisdiction in cases of partition, and that jurisdiction has been exercised so long that the power is not now a matter of dispute.

If we are correct in this, it would seem to follow that the defendant was not entitled to a jury as a matter of right, unless the jurisdiction of courts of equity has been changed by our constitution or statute, and that the court, sitting as a court of equity, had the right to proceed in the trial of the case without a jury, in accordance with the rules and practice of courts of equity in other cases cognizable in such courts. Under our present constitution the right of trial by jury is preserved, but that provision has no reference to cases in which courts of equity have jurisdiction. That question was considered in *Heacock* v. *Hosmer*, 109 Ill. 245, and we there held that the present constitution of the State preserves the right of trial by jury in all cases where that right had existed before its adoption; but the right to such trial does not extend to cases in equity, but is confined to cases at law. There is, therefore, nothing in the constitution which takes away from courts of equity jurisdiction in partition cases, and so far as our statute is concerned, jurisdiction is con-

ferred in express words. So far, then, as defendant's constitutional right to a trial by jury was concerned, we are of opinion that the decision of the court was correct,—that the cause was one in equity, in which a trial by jury could not be demanded as a matter of right, under the constitution and laws of the State.

Section 1, chapter 106, of the Revised Statutes of 1874, confers jurisdiction on a court of chancery to partition lands held by tenants in common, whether the title may be derived by purchase, devise or descent. Section 39 of the same act provides, that "in all suits for the partition of real estate, whether by bill in chancery or by petition, under this act, the court may investigate and determine all questions of conflicting or controverted titles, and remove clouds, * * * invest titles, by their decrees, in the parties to whom the premises are allotted." This statute has been construed and sustained in the following cases: *Henrichsen* v. *Hodgen,* 67 Ill. 179; *Gage* v. *Lightburn,* 93 id. 248.

The defendant, Flaherty, set up as a bar to a recovery on the part of the McCormicks, adverse possession under claim of ownership for twenty years before the filing of the bill. The original bill was filed on the 20th day of October, 1882, and if Flaherty went into the actual possession of the land in controversy prior to October 20, 1862, as owner, and continued in the actual possession under such claim from the time of his entry until the filing of the bill, it is manifest he is entitled to claim the protection of the statute as a bar to a recovery of the possession of the premises in any action brought by the McCormicks, although they may have established title to the land. It is true that an adverse possession sufficient to defeat the right of action of the party who holds the legal title, must be hostile in its inception, and so continue without interruption for a period of twenty years. The possession must be actual, visible and exclusive,—acquired and retained under claim of title inconsistent with that of

the true owner. The title need not be a rightful claim, nor even a muniment of title. It is sufficient when a party takes possession of land claiming it to be his own, and holds the possession for the requisite period, with the continued assertion of ownership. (*Turney* v. *Chamberlain*, 15 Ill. 271.) Flaherty testified that he went into the possession of the premises in the spring of 1856, and in this he is corroborated by a number of witnesses; but some of the witnesses for complainant fix the date of his entry upon the land in 1857 or 1858. This conflict, however, is not material. If the possession did not commence until 1858, there was ample time to complete the running of the statute before the action was commenced. Whether the entry, therefore, was in 1856, 1857 or 1858, is not material. It is, however, fully established by the evidence, that in one of these years Flaherty went into the possession of the premises in dispute, erected a house thereon, inclosed the land with a fence, and from that time down to the present he has occupied the property and cultivated it, asserting to be the owner. It is true that the land embraced in Flaherty's inclosure was in an irregular shape, and that he has not paid the taxes thereon, which may be regarded as a circumstance against him; but it is apparent from the evidence, that from the beginning of his possession he has all the time asserted ownership of the property. It is also true that he did not enter under a paper title, but that was not necessary. As held in the case heretofore cited, his entry under claim of ownership was enough.

It is plain, from the evidence, the possession of Flaherty was visible, open and notorious, and continued for a sufficient time to bar a recovery, unless, as is claimed in the bill, he was in the possession under the title of Walker, who conveyed to the McCormicks. Samuel J. Walker claimed to have acquired title to the premises in 1853, which were conveyed to the McCormicks in 1872. It is not claimed that Flaherty entered originally under Walker, or that he ever accepted or

held a written lease from Walker or his grantee, but reliance is placed upon three things to establish the fact that Flaherty held under the Walker title, viz: First, it appears that one Clark, in 1863, acting for Iglehart & Co., who were agents of Samuel J. Walker, served a notice on Flaherty requiring him to vacate the premises. Clark left the notice at Flaherty's house, and afterwards met him and informed him about the notice, and Flaherty asked if he could not make some arrangement with Iglehart. He was referred to Iglehart, and the two had a conference, but what was said or agreed upon, if anything, is not disclosed by the evidence. At the time of this occurrence, Flaherty had been living on and cultivating the premises, under the claim of ownership, for six or seven years. After the interview with Iglehart, he continued in the possession precisely as he did before. No rent, so far as appears, was demanded or paid. Indeed, nothing was done to indicate any change in the manner in which he occupied the land. Giving this interview all the prominence which can in reason be attached to it, it is so meagre and indefinite that it can not be relied upon, with any degree of confidence, to establish the fact that Flaherty had abandoned his claim as owner, and held possession under the Walker title. The next thing relied upon is an alleged conversation which occurred in the spring of 1871, between Henry H. Walker (acting for Samuel J. Walker,) and Flaherty. The substance of Walker's evidence on this point is, that he had an interview with Flaherty, on the premises, and asked him whose land he was occupying, and he replied, "Walker's," and it was then arranged, as Walker says, that Flaherty should remain in possession of the land at a rent of $25 per annum. The next thing relied upon is an interview, on the premises, in the latter part of 1871 or early in 1872, between the two Walkers and Flaherty, in which, as the Walkers testify, Flaherty admitted that the land he occupied belonged to the Walkers. Samuel J. Walker then arranged with Flaherty

that he should remain on the premises without charge, he keeping off intruders, until possession was required. These conversations were unequivocally denied by Flaherty, who testified that he never had either of the conversations, at any time or place. The Walkers, it will be remembered, were large dealers in real estate, and doubtless knew and realized the importance, not only of obtaining the possession of a tract of land occupied adversely to their title, but also of preserving the evidence of a fact of that character, and it seems strange, if their version of the transaction is the correct one, when they found Flaherty, who then had occupied the land fifteen or sixteen years, willing to recognize their title and become their tenant, that they failed to place the matter beyond dispute, and have a written lease executed. If an agreement was made, as claimed, that Flaherty should hold under the Walker title, it is but reasonable to believe that a written lease would have been executed, and the fact that no lease was prepared and signed, is a strong circumstance in Flaherty's favor. In the first interview which H. H. Walker had with Flaherty, he testified, as before stated, that it was arranged that Flaherty should remain in possession of the premises at $25 per annum. If this was true, when he and Samuel Walker called on Flaherty, six or eight months later, why did Samuel Walker then inquire "whose premises those were that he was on?" If he was holding at a rental of $25 per annum, the Walkers knew it, and why ask the question which was propounded? If the owner of a farm should lease it to a tenant, and in six or eight months call on the tenant to see how he was getting along, and ask him who owned the land he occupied, any reasonable person would conclude, and justly, too, that the landlord was insane.

But this is not the only strange thing in regard to the conduct of the Walkers. According to H. H. Walker's account, Flaherty was to pay $25 per annum rent. When they called the second time nothing was said about the payment of the

rent previously agreed upon, but Samuel Walker, without any request from Flaherty, informed him that he could occupy the premises without charge. This was magnanimous; but if a lease was in existence, why make such a change? Again, as before observed, Flaherty had occupied the property, claiming it as owner, for fifteen years, and yet the moment the Walkers appeared, strangers as they were, according to their version of the transaction, he recognized their title, and agreed to surrender up the land, with the house, fences, and all other improvements he had made at his own expense, and not a single word was said in regard to pay for the outlay he had made on the property. It is possible that Flaherty did as the Walkers claim, but the occurrence is so unreasonable and contrary to what might be expected from a man situated as Flaherty was, that we do not regard the evidence, contradicted as it was by Flaherty, sufficient to convert his possession from that of one claiming title, into that of a tenant, or sufficient to establish the fact that Flaherty was holding the possession of the land under the Walker title.

As has been observed, Flaherty entered into possession of the land without paper title of any description, and it is contended in the argument that his possession was not adverse or hostile, and, although continued for twenty years, such possession was not a bar to a recovery in an action brought by the owner of the title. We are aware of the fact that it has been held by some courts of last resort that possession of lands, to be availing, must be taken and held under color of title; but such is not the rule which has been established in this State. This court has held in a number of cases, that actual occupation of a tract of land for a period of twenty years, under claim of ownership, is sufficient to bar an action brought by the party holding the title, where the owner of the title is not under disability. *Weber* v. *Anderson*, 73 Ill. 440; *Hubbard* v. *Stearns*, 86 id. 35; *Schneider* v. *Botsch*, 90 id. 577; *James* v. *Indianapolis and St. Louis Railroad Co.*

91 id. 554. The doctrine announced in the cases cited we believe to be well sustained by the courts of other States. In *Overfield* v. *Christie*, 7 Serg. & Rawle, 177, the court, in considering the question of adverse possession, said: "I have no manner of doubt that one who enters as a trespasser, clears land, builds a house and lives in it, acquires something which he may transfer to another; and if the possession of the two, added together, amounts to twenty-one years, and was adverse to him who had the legal title, the act of limitation will be a bar to his recovery." In *Payne* v. *Skinner*, 8 Ohio, 159, it was held that possession, to be availing under the Statute of Limitations, must be actual and notorious, but whether the person claiming under the statute did or did not enter into possession under color of title was immaterial. Other decisions in that State are to the same effect, and the statute in that State which bars an action unless suit is brought within twenty years, is almost identical with our statute on the subject. In *Bowman* v. *Grubbs*, 26 Ind. 419, it was also held that color of title was not necessary to constitute an adverse holding so as to bar an action under the Statute of Limitations. It is there said: "It is claimed that the defendant went into possession without color of title,—that he was a mere trespasser. * * * Color of title is not necessary to constitute an adverse holding so as to bar an action under the Statute of Limitations. * * * The fact of possession, and the *quo animo* it commenced, are the tests. The defendant entered under a claim of ownership, and he was in possession to the extent of his claim." In *Munshower* v. *Patton*, 10 Serg. & Rawle, 334, it was held that actual occupation, however tortious it might be, and however destitute of color of title, either in law or equity, gives a right to the extent of inclosure against all the world but the State. Other authorities might be cited, but it is unnecessary.

The language of our statute will not admit of the construction contended for. It provides, "that no person shall com-

mence an action for the recovery of lands, nor make an entry thereon, unless within twenty years after the right to bring such action or make such entry accrued." No mention is made in the statute in reference to the occupant having color of title, and we do not feel at liberty to impose a requirement not specified in the statute. The action accrued when Flaherty went into actual possession of the land claiming to be the owner, and if the persons holding the title saw proper to allow him to occupy the land for a period of twenty years, until their right of action was barred by the statute, they alone are to blame.

The judgment of the Superior Court will be reversed and the cause remanded.

*Judgment reversed.*

SCOTT and SHELDON, JJ., dissenting.