Vanduzer, adm'r, *vs.* McMillan.

---

W. T. VANDUZER, administrator of IRA CHRISTIAN, deceased, plaintiff in error, *vs.* ROBERT McMILLAN, defendant in error.

1st. Where a long and complicated account between mercantile partners, had been referred, by the presiding Judge, to an auditor to report thereon, and his report being filed, on the first day of the term of the Court at which the trial was had, and the defendant and his counsel having made an affidavit in writing, that they believed that said report was erroneous in its results, that they had objections to the same, and desired to except thereto, that they could not do justice to said cause without further time to examine the same, and that his counsel, on account of their engagements in the Court, have not had time to make the necessary examination of the report and to file exceptions thereto, that the application for continuance was not made for delay, but to enable them to make a proper preparation for the trial of said cause : *Held,* that under the peculiar state of the facts which existed in this case, the ends of justice required, that a continuance of the cause should have been granted by the Court.

2. Where an auditor had been appointed by the Chancellor in vacation upon the *ex parte* application of the complainant, *without the consent* of the defendants, to investigate the accounts between the parties and report the result thereof to the next term of the Court : *Held,* on exception being taken to the report of such auditor and to his appointment, that the provisions of the Code upon this subject superceded the Act of 1858, and that, by a fair construction of the 3070, 3071st and 4112th sections of the Code, a Court of Chancery in this State may refer complicated accounts to a master in chancery, at the discretion of the Court, with or without the consent of the parties ; but neither such Court, nor the chancellor in vacation, can appoint an auditor to investigate complicated accounts between the parties and make report thereon without *the consent of both parties thereto.* The three sections of the Code being *in pari materia,* must be construed together.

3. *Held,* also, that where one of two mercantile partners is an attorney

at law, and after the dissolution of the copartnership, a part of the debts due to the firm are placed in the hands of one partner and part thereof in the hands of the other partner for collection, the notes and accounts so being placed in the hands of the partner, who is an attorney at law, does not authorize him, as such partner, to charge commissions for such collection against the other partner, in the absence of any special agreement to that effect; the legal presumption is that he was to collect the debts as *partner* for the benefit of the concern. If, however, it had become necessary to institute suits for the collection of the debts, and such suits were instituted by him, as an attorney at law, he might be allowed for his *necessary* professional services, the same commissions as would have been required to have been paid to some other attorney at law for the same services, in the absence of any evidence that his professional services as an attorney was to be rendered under the copartnership contract. Judgment reversed.

Equity. Tried before Judge WILLIAM M. REESE. Elbert Superior Court. September Term, 1867.

A skeleton report of the one hundred and seven pages of this record will furnish all the *data* necessary for an understanding of the opinion of the Court.

Ira Christian and Moses E. Mills were partners in merchandise under the style of Ira Christian & Co. On the 30th of March, 1850, Christian sold to McMillan, one-half of his undivided half interest in the stock and assets of the firm. Mills and McMillan and Christian continued the business under the old style, Mills controlling the business, papers, etc., until the 1st of January, 1851, and then they dissolved the firm; each took and disposed of his share of the stock Mills kept the books and papers till February, 1852, and then gave to McMillan, in notes supposed to be good, $4776.84, and in accounts, bad and doubtful, $685.43, which McMillan was to collect and apply to the payment of the firm debts.

The firm owed various persons—say $9000.00; $1615.77 in open accounts were still on the books. Ira Christian individually owed the firm $4001.09; Mills owed it $1239.93, and other sums unknown; and McMillan owed it $555.58.

The creditors of the firm were importunate. McMillan paid them out of his own funds, debts amounting in princi-

pal and interest, on the 3d of January, 1855, to $10,754.58 ; whereas, up to that time $1669.44 was the sum total of his collections for said firm.  On the 1st of January, 1852, McMillan and Ira Christian discharged many of said firm's notes by giving theirs in *lieu* of them, and paid out money to discharge others of them.

Said firm also owed McMillan & Christian, as members of another firm, $1200.00.   McMillan was willing to give up his papers and come to a full settlement, but Mills and Christian refused to do so.

Therefore, he filed his bill for discovery account and settlement of both firms, to which was attached exhibits of the various papers, accounts current, etc., etc., referred to in the foregoing allegations in his bill.

The bill was served on both defendants; the record does not show any answer to it by Mills, and there was no appearance for him on the trial; Christian died before answering, and Wm. T. Vanduzer, his administrator, was made a party.

He answered the bill so far as he knew the facts.   The main facts, as to the formation and dissolution of the firm aforesaid, he admitted; but he gave a list of the *choses in action*, left with McMillan by Mills for collection, amounting to $7,393.75, and said if they had not been collected it was McMillan's fault.   As to the other allegations, charging Christian, he insisted on proof.   And he set up against McMillan that he and Christian had on the 1st of January, 1851, borrowed 1,500.00 of Joseph Rucker, (of which only $200.00 had been paid,) and had collected on a draft drawn by Christian $500.00, which two sums were placed in McMillan's hands to pay the firm debts ; that McMillan was to pay the board, charges, etc., of the Clerk, and Christian had paid them; that Christian paid out large expenses in going to Charleston for the firm, and in paying certain debts (exhibited), and claimed that McMillan should be charged with one-half of these items in the settlement.

By amendment of his bill in August, 1860, McMillan averred that $2,000.00 of the claims left with him for col-

lection were insolvent, and that he had incurred extra expenses in collecting and paying out the proceeds, and claimed that $1,000.00 as fees should be allowed him therefor.

Vanduzer, in answer, replied that he was collecting as partner, and not as attorney, and had already charged two and a half per cent. commissions, and should have no more.

At September Term, 1859, Jno. C. Burch, Esq., was appointed an auditor of said claims, but never made any report. It was afterwards agreed that Judge Reese should hear and determine all the said matters, but this was not done. At September Term, 1866, Col. Samuel Barnett, of Wilkes county, was appointed a master in chancery, to determine them; but defendant objected to him, because he lived out of the county, etc. Then John H. Jones, Esq., was appointed master in chancery for the case, and defendant objected, because he was not the general master of the circuit, and he declined to act. Finally, in Chambers, complainant's solicitors prayed that an auditor be appointed to adjust the accounts, etc., and thereupon E. P. Edwards, of Elberton, was appointed auditor, without notice to complainant.

Upon hearing of his appointment Vanduzer protested against his acting as auditor, because his appointment was without notice to him, upon complainant's *ex parte* application, and at Chambers, and because he was appointed auditor, and not master in chancery.

On Monday, the first day of the term, the auditor filed in office his report stating only that Mills owed McMillan $2,768.31, and Vanduzer, as administrator of Christian, owed McMillan $10,375.72.

On the next day the case was called for trial, complainant was ready, but defendant, Vanduzer, wishing to continue the case, the chancellor required him to make a showing in writing:

It was substantially this: By said order at Chambers, said auditor was appointed; he sat on the 16th of July, 1867, did not return his report till yesterday; defendant has objections to said report, which he desires to prepare and file, and believes the report erroneous in its results; defendant's coun-

Vanduzer, adm'r, *vs.* McMillan.

sel believe they can not do justice to said cause without opportunity to examine the report and prepare objections to it; their engagements and the recent filing of the same have denied them such opportunity; because it was pending before the auditor, and their expectations being that time would be given to examine the report, they had not prepared for trial at this term; the case is extensive and complicated, requires careful and minute preparation, which they were prevented from making by waiting for said report; one of them, Mr. Akerman, about two weeks before, applied at the clerk's office for the report, and learned it had not been put into his office; that he, also, frequently applied to them for the interrogatories, and found most of them out, though an inspection of them was necessary for such preparation, (complainant's solicitors have had the papers in the case for seven weeks last past); they were too busy in Court then to prepare the case, and this showing was not made for delay only, etc. This was sworn to by Vanduzer and his solicitors, Akerman and Hester.

The Court refused the continuance, but stated he would give them till Thursday to file their exceptions to the report; they asked a longer time, reiterating the reasons aforesaid, but the Court would not give more time.

They excepted to the report on the grounds that the auditor was appointed in vacation, without their consent or notice of the application or opportunity to object to the appointment or to the person appointed; that the auditor was not sworn; that he had acted against defendant's protest; that his report did not state the evidence submitted to him, nor on what evidence he acted; nor what demands *pro* and *con* were allowed, and what rejected; nor from what dates he counted interest, nor what is principal and what is interest; nor how the accounts stand between each partner and the firm, nor in what proportion he held defendant liable to plaintiff on indebtedness between the firm and each partner; that the report makes defendant liable to complainant for more than one-fourth of the indebtedness of the firm to complainant, and of his intestate to the firm; Ira Christian's estate does not owe

as much as is reported against him; and lastly, the auditor had before him a paper relating to the case, written by the complainant, which was objected to as incompetent evidence, and because it was no part of the pleadings or papers belonging to the case. (What this paper was, does not appear by the record.) It was admitted that the auditor was not sworn. The Court held none of the grounds of exception good, except the failure to distinguish the principal and interest; in this respect the auditor amended his report, and then the exceptions were overruled, with the understanding that the defendants might introduce evidence as to how the accounts stood between each partner and the firm, and as to whether the report was based on charging defendant with more than one-fourth of the indebtedness of the firm.

The complainant then read in evidence the report and amended report of the auditor aforesaid (defendant objecting,) and closed.

Defendant read in evidence the renewal note of McMillan and Christian to Jos. Rucker, for $1,646.00, dated 6th of June, 1854, and due one day thereafter, for borrowed money, and the original papers in a common law action brought to September Term, 1858, in said Court, Robt. McMillan vs. Wm. T. Vanduzer, administrator of Ira Christian, deceased, on said note, (for contribution,) and on other demands in which, at March Term, 1866, plaintiff had a judgment for $ ———.

VANDUZER then testified that complainant, on the 14th of December, 1856, while Christian was sick, (he died on the 27th of that month,) spoke to him of his and Christian's business, said the money was gotten from Rucker and applied by complainant to the debts of the Mills firm, and the complainant then considered half of the Rucker note a debt on Christian. Circumstances impressed this conversation on his mind, and he made a memorandum of it; that Christian boarded Wood, the clerk, who was his brother-in-law, from ——— to ———, and board was worth $10.00 per month; that complainant employed him as an attorney at law to collect some of the firm debts after dissolution, he collected several

hundred dollars, and was paid by complainant 2½ per cent. for his fees.

The defendants then examined EDWARDS, the auditor, and proved by him what claims he had allowed *pro* and *con*, and that he had allowed McMillan $1,000.00, it being 10 per cent., as commissions for collections. The only evidence before him in relation to commissions, was the statement of McMillan, who *stated in his place*, that ten per cent. was a reasonable fee for such collections, and he, (the auditor,) having knowledge of such matters as a lawyer, thought it a reasonable fee. They introduced a mass of papers to show indebtedness of McMillan, and payments by Christian and his administrator, and examined General Robert Toombs, who testified that he had practiced law for thirty-seven years, that 5 per cent. was usual attorneys commissions for plain collections, 10 per cent. for litigation, and, perhaps, more than 5 per cent. on Justices' Court claims.

In rebuttal the complainant came with another mass of papers making in his favor,—showed, by Hester, that attorneys' fees varied from 2½ per cent. to 10 per cent., according to circumstances, and by other witnesses, that Mills was solvent till the emancipation of the slaves, but left Elbert county, in 1865, for Alabama, being then insolvent. To this last item of evidence Vanduzer objected.

The verdict against Vanduzer as such administrator was for $9,860.02 and costs.

The defendant moved for a new trial, alleging that the Court erred. 1st, In refusing the continuance. 2d, In refusing time to prepare objections to the auditor's report. 3d, In overruling the objections to the report. 4th, In admitting the report as evidence. 5th, In allowing evidence of Mills' insolvency. 6th, In saying, in his charge to the jury, "At the last term of this Court, against the protest of Mr. McMillan, I ordered this case to be laid before a master in chancery. I say this on account of the remark of counsel for defendant that Mr. McMillan had not dared to face a jury," there being no evidence in the case of such protest. 7th, In charging as to the Rucker note, that "the record of

21

of the common law action introduced, shows conclusively that Christian received half of the money got from Rucker on this note," and in declining to charge, as requested, that "if the money got on that note was applied by complainant to payment of the debts of the firm for which he claimed credit on his suit, half the amount should be allowed to Christian in this settlement. 8th, In charging that if McMillan's services "were rendered outside of the business of the firm and as an attorney, he was entitled to compensation for them," there being no pleadings or evidence to authorize such charge. 9th, In charging that "the notes of Jackson and others signed by Christian and McMillan jointly after the dissolution, if shown to be firm notes, and paid subsequently by McMillan, ought to have been allowed by the auditor, unless it is shown by proof that the notes were taken in payment by the firm creditors," and in declining to charge as requested, that "such notes, if founded on firm debts, were evidence of a joint payment of such debts by McMillan & Christian, entitling each of them to be allowed half of the amount of such notes in his settlement." 10th, In charging that, "if Mills is insolvent, half the amount of his indebtedness to complainant as a creditor of the firm, should be charged to Christian's estate." 11th, In charging that the principles of the settlement made by the auditor are correct, and that a settlement on any other principles would be wrong; and lastly, because the verdict was contrary to law, against the evidence, etc.

The Court refused a new trial. He then passed an order allowing the auditor $500.00, of which complainant was to pay $300.00, and Vanduzer was to pay $200.00, as part of his expenses in administering the estate. To this order as to Christian's estate Vanduzer excepted. His solicitors here assign for error this last order and the refusal of the new trial on the grounds taken.

AKERMAN & HESTER, for for plaintiffs in error.

TOOMBS, for defendant in error, cited new Code, sections 3070, 3071, 301 as to auditor; section 3749 as to Mills' insol-

vency, and as to Rucker judgment, section 3749, 26th Ga., 171, 17th Ga., 166 ; on 7th ground, section 1904, 3d John, Ch. R., 431; as to 10th ground, 28th Ga., 257, 30th Ga., 857, as to the 11th ground.

WARNER, C. J.

Reluctant as this Court always is to interfere with the *discretion* of the Circuit Courts, in granting, or refusing to grant, the continuance of causes, yet, upon the statement of facts contained in this record, we think the ends of justice required that a continuance of the cause, should have been allowed by the Court below upon the showing made therefor. The *intrinsic* difficulties springing out of the complicated state of facts embraced in the auditor's report, covering as it did, mercantile transactions for years between the partners, unnecessarily required time for examination.   The report of the auditor was made at the opening of the Court, in which the defendant's counsel, as they state on oath, were necessarily engaged in the general business of the Court, which prevented them from devoting a sufficient portion of their time to a thorough examination, and review of the auditor's report in connection with the partnership concerns, one of the partners, whom the defendant represented, being dead.   Whilst it is the duty of the Court to prevent unnecessary delay in the trial of causes, yet, it should be careful not to prejudice the substantial rights of parties, by forcing them to trial when they cannot *reasonably* be expected to do full and complete justice to their case.

There were several points made, and exceptions taken, to the auditor's report in this case, which, in the view we have taken of the Auditor's appointment by the Court below, it is necessary to decide, inasmuch, as we sustain the exception made to the auditor's appointment.   The appointment of the auditor being irregular, his report necessarily falls with it.   In this case, it appears from the record, that E. P. Edwards, Esq., was appointed auditor by the Chancellor in vacation, on the 21st June, 1867, upon the *ex parte* application of the complainant's solicitor, for the purpose of investi-

gating the accounts between the parties, and to make report thereon to the next term of the Superior Court. The appointment of the auditor is excepted to, upon the ground that it was made without the *consent* of the defendant, and that he protested against it so soon as he had notice of it. The defendant also excepts to the order of the Court allowing the auditor the sum of five hundred dollars for his services, and requiring the defendant to pay two hundred dollars of it, as part of his expenses in administering the estate of his intestate.

2. The decision of this question involves the construction of the several sections of the Code, in regard to the appointment of Auditors by a Court of Chancery, in this State. In our judgment the provisions of the Code *supercede* the Act of 1858 upon this subject.

By the 3042 section of the Revised Code, it is declared, that "in equity causes the Court may refer any part of the facts to a master, or auditor, and his report thereon shall be *prima facie* the truth, after allowance by the Court; either party having the liberty to except. But the final decision upon the facts shall be by a special jury." The 3082 and the 3043 sections of the Revised Code declare, that "in all cases involving account, either party, as a matter of right, may apply to the Judge either in term, or vocation, for the appointment of an auditor, who shall, after notice, sit and hear evidence submitted by either party, investigate their accounts, and report the result thereof to the Court. The report so made may be objected to by either party on the ground of illegal rejection, or admission of evidence, or any other ground impeaching its propriety, which objections shall be heard and decided by the Court. The report, when finally accepted, shall be admitted as evidence to the jury with such instructions as to the effect to be given to it, as the Court shall give under the circumstances of each case." By the the 4143, 4144 and 4145 sections of the Revised Code, it is declared, "every Chancery Court in this State may appoint a master, to whom it may refer such matters of account as are complicated in their nature; or by *consent of parties* may

appoint an auditor to investigate, and report upon similar matters in dispute. Such master, or auditor, may subpœna witnesses, administer oaths, and hear testimony on any disputed fact, always giving notice of his sittings to the parties, or their solicitors. The report of the master, or auditor, when returned to Court, shall be subject to exceptions for such time as the Court may allow; and the exceptions so filed shall be the only issues of fact submitted to a jury, so far as the matters referred are concerned. When submitted the jury shall return a verdict on each exception—*seriatim.* The fees of the master, or auditor, shall be determined by the Court, unless agreed on by the parties." The three first sections of the Code already cited, are to be found under the head of "Equity," that is to say, under the general principles of equity, and under the general principles of equity relating to "Account and Set Off." The last three sections of the Code before cited, are to be found under the head of "Equity Pleading, and Practice." Taking all the sections of the Code upon this subject, and construing them all as one act in relation to the appointment of auditors, the intention of the legislature is most clearly manifested, in our judgment, that an Auditor cannot be appointed in a cause pending on the chancery side of the Court, *without the consent* of the parties thereto. The last sections of the Code are intended to regulate the *practice* in that Court. By the 3045 section of the Code, it is declared that "generally, equity jurisprudence embraces the same matters of jurisdiction, and *modes of remedy* in Georgia, as was allowed and practiced in England." The 4143 section of the Revised Code confers the authority upon every Chancery Court in the State, to appoint a master, to whom complicated accounts are to be referred. The duties of a master in chancery in England, are well defined in the books regulating the practice of the Court in that country. The master is an *officer of the Court,* to whom complicated accounts may be referred for examination, and report, at the *discretion* of the Court, with, or *without* the consent of the parties, or by *consent of parties,* the Court may appoint an auditor to investigate and report upon

similar matters in dispute. This *consent of the parties* to the appointment of an auditor by the Court is founded upon good reason, and justice. The Court might appoint an auditor very objectionable to one of the parties for some cause entirely unknown to the Court, and then require that party, as in this case, to pay such auditor for his services, out of his own pocket, his proportion of the expense, whereas, if he *consented* to his appointment he would have no just cause of complaint—such may have been the intention of the legislature in regulating the *practice* of the Court, in requiring the *consent* of the parties to the appointment of an auditor, (which was not required, in any of the previous sections of the Code,) in order to prevent that and similar results. If the parties do not consent to the appointment of an auditor, then the Court can refer the matters of account to the master, who is an officer of the Court, *without* his consent. In our judgment, the 4143 section of the Revised Code regulates the *practice* of the Court upon this question, and as we think it the better rule, we adopt it as the rule of practice in such cases. The appointment of the auditor in this case having been made, *without the consent* of the defendant, he had no authority to act as such, so far as the rights of the defendant were concerned, in the matters referred to him under that appointment.

There were several other grounds of error assigned to the rulings of the Court below, some of which were abandoned on the argument before this Court. There is one ground, however, taken in the record, which was urged before this Court, upon which, our judgment is invoked, and that is, the charge of the Court in relation to the commissions allowed the complainant, as an attorney at law, for collecting the assets of the copartnership. The Court charged the jury " that if the complainant's services were rendered outside of the business of the firm, and as an attorney, he was entitled to compensation for them." The defendant insists that there is no evidence in the record to authorize such charge. We find no direct evidence contained therein, that the complainant was an attorney at law, certainly none, that he received

Vanduzer, adm'r, *vs.* McMillan.

the copartnership assets to collect in *that capacity.* The only evidence we find relating to his professional capacity is that of Mr. Edwards, the auditor, who states that "the only evidence before him in relation to commissions, was the statement of McMillan, who *stated in his place* that ten per cent. was a reasonable fee for such collections, and he having knowledge of such matters as a lawyer, thought it a reasonable fee."

3. But if we concede that the complainant was an attorney at law, still, as a partner of the mercantile firm, he would not be entitled to charge commissions for collecting the notes, and accounts, of that mercantile firm as a partner, as against his copartner, in the absence of any *special* agreement to that effect; the legal presumption is, that he was to collect the debts due to the firm, as *partner*, for the benefit of the concern. If, however, it had become necessary to institute suits for the collection of the debts, and such suits were instituted by him as an attorney at law, he might be allowed for his *necessary* professional services the same commissions as would have been required to have been paid to some other attorney at law, for the same services, in the absence of any evidence, that his professional services as an attorney were to be rendered for the benefit of the firm, under the copartnership contract. The record in this case, however, discloses the fact that the complainant placed several hundred dollars of the debts due this copartnership firm in the hands of another attorney for collection, and that instead of paying ten per cent. for such collections, he only paid him two and a half per cent. therefor, so that in any event, the verdict allowing the complainant ten per cent. for collections, amounting to one thousand dollars, is wrong, and ought to be set aside. Let the judgment of the Court below be reversed.