## ROSANNA HEWARD

*v.*

## HENRY SLAGLE *et al.*, Administrators, etc.

1. ADMINISTRATOR—SURVIVING PARTNER. A surviving partner should never be appointed administrator on the estate of his deceased partner, because, as such survivor, he becomes accountable to the estate, and could not well account to himself as its representative.

2. SETTLEMENT OF ESTATES—*remedy of the heirs.* Where the heirs of an estate are dissatisfied with the settlement of the same, an appeal from the order of the county court, approving the settlement and discharging the administrators, is not the proper remedy. They should proceed by bill in chancery.

3. PRACTICE—*who entitled to the opening of a case.* Upon an appeal, by the heirs of an estate, to the circuit court, from an order of the county court approving the settlement of the estate and discharging the administrators, the latter, alleging they had fully administered, held the affirmative, and were entitled to the opening to the jury.

APPEAL from the Circuit Court of Tazewell county; the Hon. CHARLES TURNER, Judge, presiding.

The opinion states the case.

Messrs. COOPER & Moss, for the appellant.

Messrs. PRETTYMAN & WARE, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The appellant, a daughter and one of the heirs-at-law of Nathan Dillon, of Tazewell county, deceased, who died on the twenty-eighth of January, 1863, not satisfied with the final settlement of the estate of her father by his administrators, Mary Dillon, her mother, and Henry Slagle, her brother-in-law, appealed from the order of the county court approving the settlement, discharging the administrators, and directing distribution of the small amount claimed to be all that was remaining, out of a large estate not owing a dollar, and on which no necessity whatever existed for administration, unless it might be the commissions to the administrators and probate fees.

The circuit court approved the settlement of the county court, and discharged the administrators, and gave judgment against the appellant for the costs.

To reverse this judgment, this appeal is prosecuted.

That the appellant, with the co-heirs-at-law, had important interests in this estate of her father can not be denied, but it is very questionable if she has pursued the right course to have them properly adjudicated. The matter is so complicated by reason of the lease of the intestate to Slagle, in 1861, for five years from the first of March, 1861, more than three years of which were unexpired at his death; the deed of the heirs-at-law to their mother of the property during her life; applying for letters of administration by her and Slagle on the very day this deed bears date, and the subsequent course of the administrators in regard to the estate, by which, at its final settlement, a trifle only was left to the heirs-at-law, that it is somewhat difficult to ascertain where the true right of the case really is.

22—52ND ILL.

We will give, as briefly as we can, the views we entertain of the case from the facts developed, without pausing to discuss the many small points which have been raised, or which of the parties in the circuit court had the opening to the jury. The cause was tried by a jury, and they found, under the instructions of the court, that the administrators had fairly and fully settled the estate.

By the agreement executed by the intestate and Slagle, of March 1, 1861, they became partners in the concern, in which they engaged on the terms specified in the agreement. At the death of Dillon, Slagle became surviving partner, and should never have been appointed administrator on the estate, because, as such survivor, he became accountable to the estate, and could not well account to himself as one of its representatives. There was a positive wrong done in so appointing him. But he was appointed, and he claims that he settled this partnership concern with his co-administrator, Mrs. Dillon, she having become, by the deed of the heirs to her, entitled to the proceeds. This deed from the heirs, about which so much has been said, to their mother, was signed on the twenty-eighth day of January, 1863, the day their father died, but was not acknowledged before the magistrate until the tenth of February following. The administrators also claim that the whole estate was settled by the receipt executed by Mrs. Dillon, asserting her power to do so under this deed.

This position being taken, it becomes important to inquire, what was the intention of the parties in executing this deed, and what effect should it have upon the administration of the estate.

It appears that letters of administration were applied for on the same twenty-eighth day of January, 1863, while the corpse of the deceased was uncoffined and unburied. The letters of administration were not granted until the thirty-first, on which day the bond was also filed.

It is claimed by some of the heirs, as appears from their testimony, that their father had expressed a wish there might be

no administration on his estate, as he was not in debt, and had, near three weeks before his death, executed a deed to his heirs of all his real estate. There was no sort of necessity for administration, and these heirs insist, that they released all their interest in the estate to their mother for the very purpose of avoiding the expense and delay of administration, and it looks quite plausible and reasonable, for why should they have left the whole estate with their mother, precisely in the condition their father left it, were it not from considerations of this nature? It was understood by some of the heirs, that their mother was to give back some writing which should evidence her understanding of the effect of the deed, which, acting on the advice of Slagle, she did not do. But the deed itself fully expresses the terms on which it was made, and that the property described in it was to revert to the grantors after the death of their mother. The administrators set up the provisions of this deed as justificatory of the manner in which they have disposed of this estate. If they claim indemnity for their acts as administrators under that deed, then they should have acted in strict conformity with its plain intent and object. After setting off the widow's share, the remainder should have been turned over to her under the deed, and in specie, an inventory having been first taken. Her share so set off was her own, absolutely, which she could sell and dispose of according to her own pleasure. The bulk of the property was hers during her life, which, on her death, together with its income or proceeds, reverted to the heirs-at-law. The road to be pursued was so unmistakable that it was difficult to go astray, but from design, and for a sinister purpose. Had the course indicated by the deed and provided for by it been pursued, instead of the mere pittance exhibited on this final settlement, a good estate would be in course of creation for the heirs-at-law, awaiting their enjoyment on the death of their mother.

An appeal from the county court was not the proper mode in which to adjust these important rights and interests. Nor does it appear from the papers and exhibits produced in the

circuit court, that a full account has ever been exhibited of this estate.

Slagle, as surviving partner of Dillon, was bound to account with the representatives of Dillon. The record fails to show he has so done. As administrator, he was bound to show an account current, which he has not done, and there is much testimony in the record showing much of the personal property was never inventoried or sold. There is proof, also, of a considerable amount of gold on hand at the death of Dillon. No account whatever is given of this gold, or of any other money. An amount quite large was proved to have been in his possession about eighteen or twenty months before his death, and as he was a man of careful habits, engaged in no speculations, or business requiring the use of money, and knowing well the value of money, and as the widow said she did not intend to give in to the assessor for taxation more than seven hundred dollars, the inference is inevitable there was money on hand, to a large amount, at Dillon's death.

We do not think a full settlement of this estate has been shown. The property should have been passed over to the widow, under the deed, in specie, after an inventory was taken of it, or if a sale was made, then the proceeds should have been paid over to her for investment for her benefit, and for the benefit of the heirs-at-law.

We reverse the judgment on the general grounds here stated.

Upon the question, which party held the affirmative in this case, we are of opinion, as appeals are tried *de novo* in the circuit court, the administrators held the affirmative, they alleging they had fully administered.

As this judgment is reversed, we take occasion to say, in a case of this kind, the probate court should, on the trial of it, proceed as though a bill in chancery had been filed, hear the evidence, and investigate the account without the intervention of a jury, unless it should appear to be necessary to impannel

a jury to try some issue of fact that may be made up, as in ordinary chancery cases.

For the reasons given, the judgment is reversed and the cause remanded.

*Judgment reversed.*