ANTOINETTE R. MAYNARD, Exrx. *v.* EDWARD S. RICHARDS

and

EDWARD S. RICHARDS *v.* ANTOINETTE R. MAYNARD, Exrx.

*Filed at Ottawa May 11, 1897.*

1. PARTNERSHIP—*partnership has a limited existence after death of one partner.* The death of a partner terminates the partnership, but a community of interest in the winding up of the partnership matters continues to exist between the surviving partners and the representatives of the deceased, and the partnership continues to have a limited existence for that purpose.

2. SAME—*right of action accruing before death of partner inures to benefit of firm.* A right of action accruing to a partnership before the death of a partner inures to the benefit of the firm, and cannot be divested from the firm and vested, in whole or in part, in a surviving partner.

3. SAME—*judgment recovered after death of partner—when a partnership asset.* A judgment recovered by a surviving partner for damages for loss of profits resulting from a breach of contract which occurred during the life of the other partner, is a partnership asset, although the action was not begun until after such partner's death.

4. SAME—*surviving partner is not ordinarily entitled to extra compensation for winding up affairs.* In the absence of agreement a surviving partner is not ordinarily entitled to extra compensation for services rendered by him in winding up the affairs of the partnership.

5. SAME—*what acts are embraced in the winding up of partnership affairs.* The winding up of partnership affairs consists, in general, in selling the property, receiving money due the firm, paying firm debts and the advances of the partners, returning contributed capital, and dividing the profits.

6. SAME—*agreement to pay surviving partner extra compensation may sometimes be implied.* Where the services rendered by a surviving partner in winding up partnership affairs are extraordinary and unusual, an agreement to pay him extra compensation will sometimes be implied, particularly where the deceased partner's representatives elect to share in the profits realized from such services.

7. SAME—*instance where extra compensation is proper.* The conducting of a long and doubtful litigation by a surviving partner, who practically abandons other business and gives his time to attending trials, collecting evidence, procuring witnesses, etc., which litigation ultimately results in largely increasing the partnership assets, entitles such surviving partner to extra compensation.

8. SAME—*delay by surviving partner in paying over money collected—interest.* To warrant the allowance of interest on money collected

by a surviving partner and not at once paid over to the deceased partner's representatives, the delay must be both unreasonable and vexatious.

9. JURY—*constitutional right of trial by jury does not extend to cases in equity.* The constitutional right of trial by jury is confined to cases at law, and does not extend to proceedings in equity.

10. COURTS—*proceeding in county court to compel surviving partner to account is governed by equitable rules.* The statutory proceeding in the county court to compel a surviving partner to account with the deceased partner's representatives is to be governed by the same equitable rules and principles as govern a proceeding in equity.

11. SAME—*discretion of chancellor in matter of allowing jury trials is not reviewable.* It is within the discretion of the chancellor to permit issues of fact arising in equity cases to be tried by a jury at any time before decree, and his action in such matter is not reviewable.

*Richards* v. *Maynard*, 61 Ill. App. 336, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This is a bill, filed in the circuit court of Cook county on May 14, 1895, by Edward S. Richards against Antoinette R. Maynard, executrix of the will of John W. Maynard, deceased, and William A. Gardner, for the purpose of ascertaining the respective interests of said Richards and of the estate of the said Maynard in certain moneys recovered by the said Richards, as surviving partner of the firm of Richards, Maynard & Co., and for the purpose of determining the amount of compensation, if any, to be awarded said Richards for his services in the recovery of said moneys; and also, in a general way, for the purpose of settling the accounts between the said Richards, as surviving partner of said firm, and the estate of the deceased partner, John W. Maynard. In November, 1894, upon order of the probate court of Cook county, and after citation issued by that court, Richards filed an inventory of the co-partnership property of Richards, Maynard & Co., composed of Edward S. Richards and John W. May-

nard, and a list of the liabilities of said firm. In December, 1894, the executrix, Antoinette R. Maynard, filed a petition in the probate court, questioning the correctness of the inventory and account filed by Richards and the correctness of the charges made by him for compensation, and asking for an order upon him, as surviving partner, to pay over certain balances in his hands and to fix a time for settlement. In his account so filed in the probate court Richards had stated, that the sum of $15,000.00 was claimed by William A. Gardner, as attorney, for legal services. Gardner also filed a petition in said probate court, alleging his retention by Richards as surviving partner in the various litigations of the firm as hereinafter mentioned, and asking that the matter of his account for services might be determined by the court. The probate court on January 12, 1895, made an order, finding that Richards, as surviving partner, was indebted to Gardner in a certain sum for services, and was himself entitled to a certain sum for his own services; also sustaining objections to certain items in the account of Richards; and further finding, that Richards, as surviving partner, had assets in his hands amounting to $107,080.76, and that his liabilities amounted to $39,505.20, and that there was in his hands the sum of $67,575.56 for disposition, one-half of which, $33,787.78, the executrix was entitled to, less the credit of $11,300.00, which the court had theretofore ordered Richards to pay and which he had paid to said executrix; it was, thereupon, ordered by the probate court, that Richards, as surviving partner, pay to said executrix the sum of $22,487.78, the order to have no effect upon the previous order to pay said sum of $11,300.00; and it was further ordered, that Richards pay to said executrix the sum of $1278.50, shown to be due to her by said account for advances and disbursements in addition to the foregoing amounts. Richards appealed to the circuit court from the order of the probate court, requiring him to pay to the executrix $22,487.78;

and also took an appeal from the order, requiring him to pay compensation to William A. Gardner out of the estate of said partnership; and also prayed an appeal to the circuit court from the order requiring him to pay said executrix the sum of $1278.50.  The executrix also prayed an appeal to the circuit court from so much of said order of the probate court as allowed Richards, as surviving partner, a credit for the compensation allowed to said William A. Gardner.  Afterwards Gardner prayed an appeal to the circuit court from the order made as to his compensation, upon the ground that it was too small; the executrix appealed from the order of the probate court making allowances to said Richards for compensation and for expenses.

These several appeals from the probate court to the circuit court were docketed upon the chancery docket of the court.  While these appeals were thus pending in the circuit court, Richards filed his bill as above stated on May 14, 1895, and moved that the several appeals of himself, the executrix and Gardner be consolidated with the chancery cause begun by the filing of said bill.  An order was accordingly entered making such consolidation.  The bill was answered by the executrix and by William A. Gardner.  Gardner also filed a cross-bill which was answered by Richards.  On July 2, 1895, the court entered a decree in the consolidated causes, finding that Richards was not entitled to any compensation for services rendered by him in settling the affairs and litigation of the partnership; that Gardner was entitled to recover from Richards $7500.00 for his services as attorney for said firm of Richards, Maynard & Co. and for said Richards as surviving partner of said firm ; also finding that the said Richards, as surviving partner, had collected $107,063.36, and had made disbursements amounting to $20,296.77, leaving $86,766.59; also finding that, after deducting $7500.00 due Gardner, there was in the hands of Richards for distribution, $79,266.59, one-half of which,

$39,633.29, the executrix was entitled to receive after deducting therefrom $15,292.40, previously paid to her, leaving as the amount due her, after making such deductions, $24,340.89, to which amount the court ordered that there be added interest due on the order of the probate court, amounting to $515.34, making a total to be paid by said surviving partner to said executrix of $24,856.23 and to said Gardner of $7500.00; the court, thereupon, ordered that Richards, the surviving partner, should pay to the executrix $24,856.23, and that she should have execution therefor, and that he pay to Gardner $7500.00, and that he have execution therefor, and that Richards pay the costs of the suit.

An appeal was taken to the Appellate Court by Richards from this decree. The Appellate Court held, that Richards was entitled to compensation, and reversed the decree of the circuit court, so far as it allowed the executrix $24,856.23, and affirmed it for $16,713.77. The judgment of the Appellate Court also affirmed the decree of the circuit court allowing Gardner $7500.00, and directed that the costs be equally divided between Richards and the appellee, Antoinette R. Maynard, executrix, and that the cause be remanded to the circuit court with directions to deduct the amount of the costs of the executrix, and rendered a decree in her favor for $16,-713.77, less one-half of the excess of his costs over hers. The executrix took an appeal from the judgment of the Appellate Court to this court, so far as said judgment reduced the amount allowed her by the circuit court. Richards also took an appeal from the Appellate Court to this court. Errors are assigned upon the record by Richards and by the appellant, Antoinette R. Maynard, the executrix, and cross-errors are assigned both by said executrix and by said Richards.

The facts out of which the litigation grows, as shown by the pleadings and proofs in the cause, are substantially as follows: On January 2, 1884, Richards owned

certain letters patent, and had a contract with the Lake Shore and Michigan Southern Railway Company, by which he agreed to transfer grain, etc., and to construct upon land owned by the railway company, a transfer house with hopper scales to transfer such grain; and he was to receive certain considerations from the railway company for the making of such transfers. He covenanted to construct and maintain for ten years a transfer house in accordance with his device, and to receive, weigh and transfer all products delivered thereto with promptness and dispatch. On January 2, 1884, Richards entered into a written contract with John W. Maynard, whereby he agreed to assign said contract with the railway company and a license to use his patented device in the performance of said contract to the firm of Richards, Maynard & Co., composed of himself and said John W. Maynard. Richards had no means of his own, and Maynard was to furnish the money to construct, maintain and operate the transfer house. Maynard was to contribute the use of the transfer house which was built upon ground leased for ten years from the railway company to the use of the firm during the period of ten years, during which the said firm was to perform the contract with the railway company. Each party was to contribute his time, energies and ability to the prosecution of the business, and to share equally in the profits and losses thereof, and, if death made it necessary, they were to make a full, accurate and final account of the condition of the partnership, and adjust the same. Accordingly Richards assigned the contract and the license to the firm, and furnished the money, exceeding $20,-000.00, to construct the transfer house. A more particular statement of the contract between Richards and the railway company will be found in *Lake Shore and Michigan Southern Railway Co.* v. *Richards*, 126 Ill. 448. On June 16, 1886, the railway company refused to further perform the contract by delivering grain, feed or seeds to be weighed

and transferred, and abandoned the contract. There-
upon, on June 5, 1886, Richards and Maynard, composing
the firm of Richards, Maynard & Co., filed a bill against
the Lake Shore and Michigan Southern Railway Com-
pany for an accounting as to what was due from the rail-
way company to them up to that date, and obtained a
decree therein against the railway company for $9686.68,
which decree was finally affirmed by this court, as will
be seen by reference to *Lake Shore and Michigan Southern
Railway Co.* v. *Richards, supra.* In July, 1886, the firm
brought another suit on the chancery side of the court
to recover damages for a total breach of the contract.
This suit was dismissed by the trial court, upon the
ground that a court of equity was not the proper forum
for the prosecution of such a claim and had no jurisdic-
tion thereof. Upon appeal to the Appellate Court, and
afterwards upon a further appeal to this court, the de-
cree of the trial court, dismissing the bill for want of
jurisdiction, was affirmed. The judgment of this court,
affirming the lower courts, was entered on May 9, 1888,
as will be seen by reference to the case of *Richards* v.
*Lake Shore and Michigan Southern Railway Co.* 124 Ill. 516.
The judgment of this court, affirming the decree for the
$9686.68 above mentioned, was rendered on November 15,
1888. While this litigation was pending, and on the 22d
day of October, 1887, John W. Maynard died, and, on De-
cember 6, 1887, Antoinette R. Maynard, his widow, was
appointed executrix of his will by the probate court of
Cook county.

After the failure of the chancery suit, which was be-
gun for the purpose of recovering unliquidated damages
resulting from a total breach of the contract, and, on
May 17, 1888, Richards, as surviving partner of said firm
of Richards, Maynard & Co., brought a suit at law against
the said railway company for the recovery of damages,
which had accrued to the firm by reason of the total
breach of the contract by the railway company, and for

future profits lost by the firm. This latter suit was be-gun in the circuit court of Cook county, and resulted in a judgment against the railroad company on April 5, 1890, for $75,000.00 and costs. An appeal was prose-cuted from this judgment to the Appellate Court, and the judgment was affirmed by that court. A further appeal was prosecuted to this court, which finally affirmed the judgment of the Appellate Court on June 19, 1894, as will be seen by reference to the case of *Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59. This judgment and interest thereon and costs, amounting to $95,594.17, was paid to one of the attorneys of Richards, as surviving partner, on October 30, 1894. The present controversy relates to the manner, in which the amount of said judgment should be divided, as between Richards, as surviving partner, and the estate of John W. Maynard, deceased.          .

GARDNER & MCFADON, for Antoinette R. Maynard and William A. Gardner:

It is the duty of a surviving partner to collect the debts and sue for demands due a firm of which one member dies. *Finnegan* v. *Allen,* 60 Ill. App. 354; *Washburn* v. *Goodman,* 17 Pick. 519; *Berry* v. *Jones,* 11 Heisk. 210; *Skelton* v. *Knight,* 68 Ala. 600; *Schenkl* v. *Dana,* 118 Mass. 239; *Tillotson* v. *Tillotson,* 34 Conn. 366.

A surviving partner being a trustee of the partnership estate for the creditors and the legal representatives of the deceased partner, is entitled to no compensation for his services in settling the partnership estate. *Lewis* v. *Moffett,* 11 Ill. 397; *Kink* v. *Hamilton,* 16 id. 196; *Huggins* v. *Rider,* 77 id. 360; *Hanks* v. *Baber,* 53 id. 292; *Hough* v. *Harvey,* 71 id. 72; *Raymond* v. *Vaughn,* 128 id. 256; *Cook* v. *Gilmore,* 133 id. 139; *Tillotson* v. *Tillotson,* 34 Conn. 366; *Cameron* v. *Francesca,* 26 Ohio St. 194; *Beatty* v. *Wray,* 19 Pa. St. 516; *Brown* v. *McFarland,* 41 id. 133; *Berry* v. *Jones,* 11 Heisk. 218; *Dunlap* v. *Watson,* 124 Mass. 305.

All members of a firm are required to devote their time, skill and efforts to the accomplishment of the objects for which it is formed, and in the absence of an agreement to the contrary neither partner has the legal right to charge the firm or the other partners for services rendered in carrying on its affairs. *Askew* v. *Springer*, 111 Ill. 665.

A trustee is not entitled to compensation for personal trouble and loss of time. Perry on Trusts, 904-906; Hill on Trustees, 889; 2 Lewin on Trusts, 627.

In the absence of an agreement for compensation a partner is not permitted to charge for his personal services in managing the partnership business during the continuance of the partnership, and the same rule applies to a surviving partner while engaged in winding up the business and disposing of the partnership assets. *Kimball* v. *Lincoln*, 5 Ill. App. 317.

On the death of a partner the co-partnership is thereby dissolved, except that the partnership has a limited continuance for the purpose of settling and winding up its affairs. *Kimball* v. *Lincoln*, 5 Ill. App. 316.

The surviving partner has a right to all property and assets of the firm until a settlement of its affairs. Parsons on Contracts, sec. 343; *Ives* v. *Ashelby*, 26 Ill. App. 244.

It is the duty of the surviving partner to settle all the obligations of and collect all obligations due to the firm. This must be done in the name of the surviving partner, at the expense of the firm. *Clay* v. *Freeman*, 118 U. S. 97.

All executory contracts of the firm which do not call for personal service of the deceased continue in effect and bind the firm. The survivor must, therefore, fulfill such contracts at the expense of the co-partnership and for its benefit. *Ayers* v. *Railway Co.* 52 Iowa, 478; *Rust* v. *Chisholm*, 57 Md. 376; *King* v. *Creighton*, 100 N. Y. 386; *Doris* v. *Dowell*, 77 Ala. 262.

A citation to an administrator to account is not a suit at law, but is the exercise of a summary power conferred

by statute and likened to a bill of discovery in chancery to sift the conscience. *In re Steele*, 65 Ill. 324; *Gilbert* v. *Guptil*, 34 id. 112.

The provision in the constitution preserving the right of trial by jury has no reference to cases in which courts of equity have jurisdiction. The right to such trial is confined to cases at law. *Flaherty* v. *McCormick*, 113 Ill. 538; *In re Steele*, 65 id. 322.

FRANK A. JOHNSON, and WILLIAM BROWN, for Edward S. Richards:

A partnership is terminated by the death of one partner. Collyer on Partnership, 59, 113; Watson on Partnership, 263; Story on Partnership, (3d ed.) chap. 5, sec. 1, pp. 219, 220; *Gillespie* v. *Hamilton*, 3 Madd. 25; *Scholfield* v. *Taylor*, 7 Russ. 586.

A contribution to a firm of the right to use a thing terminates upon dissolution. Bates on Partnership, sec. 256, note 3; Collyer on Partnership, sec. 121, p. 118; *Doe* v. *Bleck*, 8 C. & P. 464; *Doe* v. *Miles*, 1 Stark, 181; *Benham* v. *Gray*, 5 C. B. 141.

The effect of a dissolution of partnership, as between the partners themselves, is to put an end to all transactions between them as partners, except for the purpose of taking a general account and winding up the concern. Collyer on Partnership, (5th Am. ed.) sec. 121.

As between themselves, one of the partners may own all the property. *Insurance Co.* v. *Barringer*, 73 Ill. 234.

Death suspends all partnership agreements. *Oliver* v. *Forrester*, 96 Ill. 315.

An administrator or executor of a licensee under a patent takes no rights by reason of such license. *Oliver* v. *Chemical Works*, 109 U. S. 75; *Richardson* v. *Gregory*, 126 Ill. 165.

Upon the dissolution of a firm by the death of one partner a contract contributed and assigned by the other partner to the firm reverts to him and becomes his indi-

vidual property. *Watney* v. *Wells*, L. R. 2 Ch. App. 252; 1 Bates on Partnership, secs. 251-256; 2 id. 811; *Kelly* v. *Clancy*, 16 Mo. App. 550; *Root* v. *Gay*, 64 Iowa, 299; *Tutt* v. *Sand*, 50 Ga. 339; *Livingston* v. *Blanchard*, 130 Mass. 341; *Remick* v. *Emig*, 42 Ill. 342; *Norman* v. *Conn*, 20 Kan. 159; *Knight* v. *Ogden*, 2 Tenn. Ch. 473; *Oliver* v. *Forrester*, 96 Ill. 315; *Duff* v. *Gardner*, 7 Lans. 165; *Taft* v. *Schwamb*, 80 Ill. 289; *Waring* v. *Cram*, 1 Pars. Sel. Cases, 522; *Neidecker* v. *Kolberg*, 3 Daly, 407.

In an action at the suit of a surviving partner he may include a count for a debt due to himself in his own right, as both causes of action are in him. *Slipper* v. *Stidstone*, 5 D. & E. 493; *French* v. *Andrade*, 6 id. 582; *Smith* v. *Barrow*, 2 id. 476; *Golding* v. *Vaughn*, 2 Chitty, 436; *Richards* v. *Howther*, 1 B. & A. 29.

Interest is not allowed by common law. The right to interest depends upon contract or the statute, and is given as a penalty. *Stevens* v. *Cook*, 5 Jur. (N. S.) 1415; *Watney* v. *Wells*, L. R. 2 Ch. App. 250.

To warrant recovery of interest the delay in payment must be unreasonable and vexatious. *Sammis* v. *Clark*, 13 Ill. 544; *Hitt* v. *Allen*, id. 592; *McCormick* v. *Elston*, 16 id. 204; *Aldrich* v. *Dunham*, id. 403; *Railroad Co.* v. *Cobb*, 72 id. 152; *Davis* v. *Kenaga*, 51 id. 170; *Chapman* v. *Bent*, 77 id. 337; *Devine* v. *Edwards*, 101 id. 138; *Bedell* v. *Janney*, 4 Gilm. 193.

Where, after dissolution, a partner successfully continues the business of the firm, using the original capital, good will and other assets, and a benefit is recovered from his efforts, he is allowed to deduct from the profits a compensation, varying according to the state of the accounts, the nature of the business, the difficulty and results of the undertaking, and perhaps its necessity or desirability. 2 Bates on Partnership, sec. 773.

Where services in excess of mere winding up are rendered, the partner rendering them is entitled to compensation therefor. 17 Am. & Eng. Ency. of Law, 1154.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is contended by Richards, that so much of the judgment for $95,594.17, as represented the loss of the profits from October 22, 1887, the time of the death of Maynard, up to January 2, 1894, when the ten years, for which the contract with the railway company was to run, expired, did not belong to the firm of Richards, Maynard & Co., but belonged to Richards himself individually; and that, therefore, he was not bound to account for the same with Maynard's estate.   It is claimed, that, when Maynard died on October 22, 1887, the partnership between Richards and Maynard was thereby dissolved; and that the only portion of the judgment, recovered against the railroad company, belonging to the estate of Maynard, is one-half of the proportionate part thereof which represents profits that would have accrued between June 16, 1886, when there was a total breach of the contract by the railroad company, and October 22, 1887, the date of the death of Maynard.   As there were 2751 days between June 16, 1886, and January 2, 1894, the date of the termination of the contract with the railway company, and as there were 491 days between June 16, 1886, and October 22, 1887, it is contended, that the amount, to which Maynard's estate is entitled, is one-half of the proportion which 491 days bears to 2751.   This propor- is 17.85 per cent.   In other words, the first question in the case is, whether the whole amount of the judgment, recovered in the action at law against the railroad company, is a partnership or firm asset, or whether so much thereof as represents the loss of profits between the death of Maynard and January 2, 1894, is the individual property of Richards.

It is true, that the death of Maynard terminated the partnership between him and Richards; but a community of interests still continued to exist between Richards, as surviving partner, and the representatives of Maynard,

the deceased partner, notwithstanding the dissolution. The partnership continued to have a limited existence for the purpose of settling and winding up the affairs of the partnership. (*Nelson* v. *Hayner*, 66 Ill. 487.) The railway company abandoned the contract and was guilty of a total breach thereof on June 16, 1886, during the life of Maynard. At that time a right of action accrued to the firm to recover the damages or future profits, which were afterwards recovered in the action at law begun on May 17, 1888. It was during the existence of the firm that the right of action accrued. It was during the existence of the firm, to-wit: in August, 1886, that the chancery proceeding, which turned out to be ineffective, was instituted to recover the damages or future profits resulting from the total breach. Richards and Maynard, as partners, treated the repudiation of the contract by the railroad company as putting an end to it for all purposes of performance, and sued for the profits they would have realized if they had not been prevented from performing. The contract was thereby continued in force for that purpose. (*Lake Shore and Michigan Southern Railroad Co.* v. *Richards*, 152 Ill. 59.) Such accrued right of action in favor of both partners could not be divested from the firm and vested in appellant individually, either in whole or in part. The construction and use of the transfer house by Maynard, and the assignment of the contract with the railroad company to the firm by Richards, were contributed to the firm for the express purpose of performing the contract, which was not to be completed for a period of ten years. If the railroad company had not refused to perform, the estate of Maynard would have been under obligations to allow Richards, as surviving partner, to continue the use of the transfer house and the machinery, in order to carry out the contract. So, also, the contract between the railroad company and Richards was assigned by him to the firm, and this assignment was ratified by the railroad company. The

contract was thereafter a partnership asset, and the obligation to perform it was upon both the partners equally, and upon the legal representatives of each of them in case of death. If two parties enter into a partnership for the purpose of performing a contract whose performance requires ten years, and each contributes certain property to the firm for the purpose of performing it, and such property is absolutely necessary to such performance, the right to its use should not be taken away from the surviving partner because the other partner happens to die. Maynard would certainly have had a right to his share of these damages if they had been collected in his lifetime, and his estate has not lost them by his death. It is the duty of the surviving partner to settle all the obligations of the firm and to collect all the debts due to the firm. This must be done in the name of the surviving partner at the expense of the firm. (*Clay* v. *Freeman*, 118 U. S. 97). Where the object of the partnership is to carry out a contract which was unfinished when one of the partners dies, the court will not necessarily order the property sold, nor the share of the deceased partner in it ascertained by valuation, but will leave the surviving partner to complete the contract, and will postpone the account until it is completed. (*McClean* v. *Kennard*, 9 L. R. Ch. Pl. 336; *Rust* v. *Chisholm*, 57 Md. 376; *Ayers* v. *Railway Co.* 52 Iowa, 478; *King* v. *Creighton*, 100 N. Y. 386; *Doris* v. *Dowell*, 77 Ala. 262). Choses in action, debts and other rights of action of a firm, belong to the surviving partners, and they possess the sole and exclusive right to reduce them to possession, but when they are recovered, the survivors are regarded as the trustees thereof for the benefit of the partnership, and the representatives of the deceased partner possess in equity the same right of sharing and participating in them, which the deceased partner would have possessed if he had been living. (Story on Partnership, sec. 346). In addition to what has already been said, the action, which

was brought for the recovery of these future profits or
damages from the railroad company, was brought by
Richards, as surviving partner of the firm of Richards,
Maynard & Co.   In the declaration in that suit, which is
filed as an exhibit to the bill in this case, the amount
due from the railroad company is spoken of as due to the
firm, and the recovery sought is of the damages suffered
by the firm, and of the profits lost by the firm.   Counsel
refer to certain authorities, which hold that a surviving
partner may, in an action brought by him, include in his
declaration a count for a debt due to himself in his own
right.   But here, the declaration contains no count in
which Richards claims the loss of profits for the period
between the death of Maynard and the expiration of the
ten years, as belonging to him in his own right; nor does
the declaration contain a count for damages due to him,
as surviving partner, for the period between the total
breach of the contract and the death of Maynard.   For
the reasons thus stated, we are of the opinion, that the
amount of the judgment, recovered in the action against
the railroad company for damages or future profits, was
a partnership asset, and, therefore, should be divided be-
tween Richards and the estate of his deceased partner,
Maynard.

*Second*—The next question which arises is as to the
right of Richards, as surviving partner, to have compen-
sation for his services in obtaining for the partnership
estate the fund of $95,594.17 by the prosecution of the ac-
tion at law against the Lake Shore and Michigan South-
ern Railway Company.   It is well settled, that one partner
cannot charge the firm, or his co-partners, for his services
in attending to the partnership business, unless there is
a special agreement among the partners entitling him to
do so.   In the absence of such an agreement, the law will
not imply one "from the greater industry or greater abil-
ity of any one partner." (*Brownell* v. *Steere*, 128 Ill. 209;
Parsons on Partnership, sec. 155).   The reason of the rule

is, that each partner is under obligations to devote his
skill and efforts to the promotion of the common benefit
of the firm. (*Lewis* v. *Moffett*, 11 Ill. 392). The same rule
applies as to services of a surviving partner as between
himself and the representatives of the deceased partner.
The text books and the authorities all hold, that, after
the dissolution of the firm by the death of one of the
partners, the surviving partner is entitled to no extra
compensation for services rendered by him in winding
up the affairs of the partnership, in the absence of any
agreement allowing such compensation in the articles
of co-partnership. (17 Am. & Eng. Ency. of Law, 1183;
2 Bates on Partnership, secs. 771, 772; Collyer on Part-
nership, sec. 199; Parsons on Partnership, secs. 346, 155,
note *c*).

But the rule, that a surviving partner is entitled to no
extra compensation, applies to his services in winding
up the partnership. The winding up or settling of the
partnership affairs after the death of one of the partners
may be said to consist, as a general thing, in selling the
property, receiving moneys due the firm, paying the firm
debts and the advances of the partners, returning the
capital contributed by each partner, and dividing the pro-
fits. Where, however, the surviving partner renders ser-
vices in excess of the mere winding up of the partnership
affairs, he will, under certain circumstances, be entitled
to compensation for such excess. (17 Am. & Eng. Ency.
of Law, 1154, 1183; 2 Lindley on Partnership, 1046; Coll-
yer on Partnership, sec. 328; Parsons on Partnership, sec.
346). It is said, in Bates on the Law of Partnership, at
section 773: "The rule applies merely to the simple and
immediate winding up by collecting the assets, paying the
debts and accounting for the surplus, as is necessarily
involved in the creation of the partnership and implied
in the contract; but for time, skill and labor expended
beyond this, and inuring to the general benefit, the rea-
son of the rule fails." The most usual cases, where the

1C6—31

surviving partner is allowed compensation, are cases where he successfully continues the business of the firm, or successfully completes an enterprise in which the firm has been engaged, so that a substantial benefit is received from his efforts. The amount of compensation will vary according to the state of the accounts, the nature of the business, the difficulty and results of the undertaking, and its necessity or desirability. (2 Bates on Partnership, sec. 773; 17 Am. & Eng. Ency. of Law, 1183). If he performs such extra services with the consent of the representatives of the deceased partner, such consent is sometimes an important factor in determining the question whether he is entitled to compensation. His claim to compensation will, in connection with the circumstances already mentioned, be looked upon with favor, if the representatives of the deceased partner elect to share in the profits realized from his services as surviving partner. While it is true, that compensation will ordinarily be denied to a surviving partner in the absence of an agreement therefor, yet an agreement will sometimes be implied where the services are extraordinary and unusual, and such as could not reasonably have been contemplated. (2 Bates on Partnership, sec. 777; *Robinson* v. *Simons,* 146 Mass. 167; *Schenkl* v. *Dana,* 118 id. 236; *Newell* v. *Humphrey,* 37 Vt. 265; *Cameron* v. *Francisco,* 26 Ohio St. 190; *Hite* v. *Hite,* 1 B. Mon. 177; *VanDuzen* v. *McMillan,* 37 Ga. 299; *Bradley* v. *Chamberlin,* 16 Vt. 615; *Griggs* v. *Clark,* 23 Cal. 427; *O'Reilly* v. *Brady,* 28 Ala. 530; *Sears* v. *Munson,* 23 Iowa, 380; *Levi* v. *Karrick,* 13 id. 344).

Applying the principles thus announced to the facts of the present case, we are of the opinion that Richards, as surviving partner, is entitled to extra compensation for his services in the prosecution of the suit at law heretofore mentioned. A suit in chancery had already been begun for the recovery of future profits for the total breach of the contract by the railroad company in the lifetime of Maynard. This chancery suit had ended ad-

versely to the firm in May, 1888. If at this point Richards had ceased the prosecution of any further litigation for a recovery of future profits, it could not have been said at that time, with the light then had upon the chances of recovery, that he was recreant in his obligations to the estate of his deceased partner. But on May 17, 1888, seven months after the death of Maynard, he commenced an action at law against the railroad company for unliquidated damages or future profits under circumstances which, to say the least, seemed to make success a doubtful matter. This suit he prosecuted for six years, and finally succeeded in recovering nearly $100,000.00 for himself and the estate of his deceased partner. His action in this regard was a continuation in another form of a litigation, which the firm had been engaged in at the time of Maynard's death, and was the completion of an effort at recovery which had been begun by the firm in the lifetime of Maynard. He spent a great deal of his time in securing evidence and attending upon numerous hearings and trials, in obtaining the attendance of witnesses, in procuring documentary evidence, in employing and consulting with attorneys, in looking up authorities, in doing clerical work, in reviewing abstracts of record, in making suggestions to his counsel. All this labor necessitated the practical abandonment of all other business. He engaged in the prosecution of the suit with the consent of the executrix of Maynard because she furnished money for costs; and the accounts in evidence show, that the sum of $1278.50 was paid to her on account of disbursements made by her in and about the suit. As soon as the judgment was obtained and the money recovered, the executrix of Maynard's estate elected to share in the amount of the recovery. It cannot be denied, that the services of Richards in this case were so extraordinary and unusual as to give rise to the presumption of an implied contract. The long and successful prosecution of the suit may be

regarded as service in excess of the mere winding up of the partnership affairs.

The case of *Zell's Appeal*, 126 Pa. St. 329, is somewhat similar in its facts to the case at bar. There, a surviving partner, many years after the death of the other partner, succeeded in compromising a land claim and realized therefrom some $50,000.00; the claim was not merely doubtful, but had no real foundation in law or equity; and the court there said: "More than thirteen years after his death, Zell seems to have discovered this claim, * * * and he prosecuted it for four years, with the energy and under the circumstances already related, to ultimate success. And now that the others come in and claim a share in the success, * * * we think in equity they should make him a fair compensation for his services."

What the amount of the compensation of Richards should be is a question of fact. There is evidence in the record sustaining the finding of the Appellate Court upon this subject. We are not disposed to disturb their judgment, so far as concerns the amount of the compensation.

*Third*—The circuit court charged Richards with interest upon certain balances in his hands and not at once paid over. The Appellate Court disallowed these charges for interest. We think that there was no error in this action of the Appellate Court. The record shows, that Richards did at one time pay over to the executrix upon order of the probate court $11,300.00, and at another time $1278.50. The questions involved as to the equitable distribution of the fund recovered were fairly debatable, and were litigated in good faith so far as we are able to discover. We have held, that delay of payment, in order to justify a recovery of interest in such cases as the present one, must be both unreasonable and vexatious. (*Devine* v. *Edwards*, 101 Ill. 138). We cannot see, that there was any unreasonable and vexatious delay here on the part of Richards.

*Fourth*—The circuit court allowed William A. Gardner $7500.00 as compensation for his services as attorney of Richards, as surviving partner of the firm. Two questions of fact were involved in this branch of the controversy: First, whether Gardner was actually employed by Richards, as surviving partner, or whether he was merely employed by Mrs. Maynard to look after her individual interests; and second, if he was employed by Richards, as surviving partner, what amount of compensation should be allowed to him for his services. The lower courts found, that Gardner was employed by Richards, as surviving partner, to perform legal services for the benefit of the firm, and we think that the evidence sustains that finding. The testimony as to the value of his services fixes such value at amounts ranging all the way from $3500.00 to $15,000.00. We are not disposed to interfere with the conclusion of the chancellor below, which has been affirmed by the Appellate Court, that his services were worth $7500.00.

*Fifth*—It is claimed, that the circuit court, sitting as a court of equity, did not have jurisdiction to pass upon Gardner's claim for fees, and that the determination of such claim should have been submitted to a jury. We are unable to agree with this contention. When Richards filed his account in the probate court, he set out therein the claim of Gardner against himself, as surviving partner, for fees. In that court it was agreed between Gardner and Richards, that the matter should be submitted to the probate court, and the probate court accordingly heard and determined it, making an allowance to Gardner. The probate court passed upon Gardner's fees as an item in the account submitted by Richards to that court. The statute provides, that, upon the application of the executor or administrator of a deceased partner, the county court may, whenever it may appear necessary, order such surviving partner to render an account to the county court, and, in case of neglect or refusal may, after cita-

tion, compel the rendition of such account by attachment. (1 Starr & Curtis' Stat. 229). Upon appeal to the circuit court from the orders of the probate court in reference to the account submitted by Richards, the matter of the account was placed upon the chancery docket. By consent of Richards, and upon his motion, these appeals were consolidated with the chancery cause which he began in the circuit court by the filing of a bill; and the consolidated causes were heard together. Gardner was a party defendant to the bill in chancery. The whole of the account of Richards, including the item as to Gardner's fees, was thus brought within the equitable jurisdiction of the circuit court. A jury trial was not therefore a matter of right. It is within the discretion of the chancellor to require the issues of fact arising in equity cases to be tried by a jury at any time before decree; and his action in the matter will not be reviewed. (*Russell* v. *Paine*, 45 Ill. 350; *Guild* v. *Hull*, 127 id. 523; *South Park Comrs.* v. *Phillips*, 27 Ill. App. 380). The provision of the constitution of 1870, prescribing the right to trial by jury, does not extend to cases in equity, but is confined to cases at law. (*Flaherty* v. *McCormick*, 113 Ill. 538; *Heacock* v. *Hosmer*, 109 id. 245). The remedy, given by statute to compel a surviving partner to account in the county court with the administrator of the deceased partner, is to be governed by the same equitable rules and principles as a proceeding in equity. (*Mack* v. *Woodruff*, 87 Ill. 570). The constitutional provision as to jury trials was not intended to introduce the jury trial into special summary jurisdictions unknown to the common law, and which did not provide for that mode of trial. (*Ward* v. *Farwell*, 97 Ill. 593). The citation to an administrator to account is not a suit at law, but the exercise of a summary power conferred by statute, and is like a bill in chancery for discovery, to sift the conscience. (*In re Steele*, 65 Ill. 322). Where there was an appeal from the order of the county court approving the settlement of an estate, we said:

"The probate court should on the trial proceed as though a bill in chancery had been filed, hear the testimony and investigate the accounts without the intervention of a jury." (*Heward* v. *Slagle*, 52 Ill. 336). The statutory proceeding in reference to an accounting by a guardian in the probate court is in substance a chancery proceeding. (*Cheney* v. *Roodhouse*, 135 Ill. 257). Inasmuch, therefore, as the statutory proceeding, requiring a surviving partner to account, is, like the proceeding requiring administrators and guardians to account, in the nature of a chancery suit; and inasmuch as, in this case, the appeals from the order of the probate court were consolidated with the chancery suit, and tried as such, it cannot be said, that the court below committed any error in not submitting the question of the amount of Gardner's compensation to a jury.

*Sixth*—We are of the opinion, that the judgment of the Appellate Court was correct in dividing the costs equally between Richards and the executrix.

After a careful examination of the whole record, we are unable to find any error in the judgment of the Appellate Court. That judgment is accordingly affirmed.

*Judgment affirmed.*